## No. 12,012.

## DAVIS v. THE PEOPLE.

Decided January 30, 1928.

Plaintiff in error was convicted of bigamy.

*Affirmed.*

*On Application for Supersedeas.*

1.  CRIMINAL LAW—*Bigamy—Venue.* In the absence of statute providing otherwise the offense of bigamy can be prosecuted only in the county in which the unlawful marriage was solemnized, and the venue must be laid in that county.

2.  *Trial—Venue—Waiver.* The constitutional provision that defendant in a criminal case shall have the right to a trial in the county or district in which the offense is alleged to have been committed, is solely for the benefit of the accused and may be waived by him at his pleasure.

3.  *Trial—Venue—Waiver.* Where defendant in a criminal case enters his plea and goes to trial without objection, and reserves his protest to the place of trial until the people rested, he will be deemed to have waived his right to object, the protest being too late.

4.  MARRIAGE—*Disability—Removal of Disability—Effect.* Upon dissolution of a subsisting marriage, an intended marriage contracted in good faith by a party thereto prior to the removal of the disability is rendered valid and binding by the continued cohabitation of the parties to such union, as the original intention to become husband and wife is presumed to continue so as to effectuate a common-law marriage.

5.  INSTRUCTIONS—*After Retirement of Jury.* There is no legal restriction to the giving of additional written instructions to the jury by the court, in a proper case, after they have retired to consider their verdict.

*Error to the District Court of the City and County of Denver, Hon. Frank McDonough, Sr., Judge.*

Mr. HARRY G. SAUNDERS, for plaintiff in error.

Mr. WILLIAM L. BOATRIGHT, Attorney General, Mr. WILLIAM W. GAUNT, Assistant, for the people.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error, hereinafter referred to as defendant, was convicted of bigamy and sentenced to the penitentiary for a term of not less than six months and not more than two years. To review that judgment he brings error and asks that the writ be made a supersedeas.

Three questions only require consideration here: (1) Had the trial court jurisdiction? (2) Was the verdict supported by the evidence? (3) Is the court's "additional instruction" free from error and was it properly given?

In June, 1914, defendant married Lotta in California and they separated in 1917. In 1918 she informed him by letter that she had procured a divorce. He was never served with summons in that action, had no other actual notice of it, and made no further inquiry concerning it. In 1919 he married Elizabeth in Arizona, having theretofore told her he had been married and divorced. They continued to live together as husband and wife, came to Denver in December, 1926, and while so residing here in August, 1927, defendant left home on a "trip." After leaving he learned, through a letter from his mother, that the decree of divorce from his first wife had not in fact been entered until 1921. He corresponded with Elizabeth until about the middle of September, 1927, but did not disclose to her this additional information concerning the date of his divorce and said nothing to her about the invalidity of her marriage or his intention to abandon her. On the 23rd of that month he married Maude at Durango, Colorado. They lived together a few days as husband and wife at Durango, and Grand Junction, Colo-

rado, then came to Denver together on October 6, where they so consorted for about twenty-four hours. Thereupon, on complaint of Elizabeth, defendant was arrested. The information charges defendant's marriage to Elizabeth; that she was his lawful wife on September 23, 1927; and that at said date he married Maude at Durango "knowing that his said wife Elizabeth Zeller was living * * * and since said last named date and with full knowledge that the said marriage * * * to the said Maude Burford was unlawful and void, did unlawfully cohabit and live together as husband and wife" with said Maude "in the City and County of Denver and State of Colorado."

1. Defendant says he could only be tried where the alleged bigamous marriage was contracted, i. e., in La Plata county, Colorado (of which Durango is the county seat). Such is the general law. "In the absence of statute providing otherwise, the offense of bigamy can be prosecuted and punished only in the county in which the unlawful marriage was solemnized, and the venue must be laid in that county." 7 C. J. p. 1167, sec. 31.

The Attorney General says our statute provides otherwise. It reads: "Bigamy consists in the having of two wives or two husbands at one and the same time, knowing that the former husband or wife is still alive. If any person or persons within this state, being married, or who shall hereafter marry, do at any time marry any person or persons, the former husband or wife being alive, the person so offending shall on conviction thereof be punished by a fine not exceeding one thousand dollars and imprisoned in the penitentiary not exceeding two years. * * * And when such second marriage shall have taken place without this state, cohabitation in this state after such second marriage shall be deemed a commission of the crime of bigamy, and the trial in such cases may take place in the county where such cohabitation shall have occurred * * *." Sec. 6835, C. L. 1921.

If the statute should be interpreted as construed by the Attorney General that portion of it relating to bigamous

marriage outside the state would be wholly superfluous. The act clearly contemplates the application of the general rule when the alleged bigamous marriage is solemnized in Colorado. Defendant was therefore entitled to a trial in Durango. He maintains this was obligatory under our Constitution. "In criminal prosecutions the accused shall have the right to * * * a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed." Art. II, sec. 16, Colo. Const. This provision, however, is solely for the benefit of the accused. It involves no question of public policy, and defendant could waive it at his pleasure. If this were not true no change of venue could be allowed a defendant in a criminal case. On that theory only are the statutes supporting such changes upheld. *State ex rel. Scott v. Crinklaw,* 40 Neb. 759, 764, 59 N. W. 370; Bish. Crim. Pro. (3rd Ed.) § 50.

In the instant case defendant was specifically advised by the recitals of the information that he was being tried in Denver for a crime alleged to have been committed in La Plata County. If he did not desire to waive his constitutional right he was in duty bound to protest when he knew that right was being violated. Having entered his plea and gone to trial, and reserved his protest until the people rested, he was too late. He had waived his right as irrevocably as if by express words. *Magee v. People,* 79 Colo. 328, 333, 245 Pac. 708; *In re Mote,* 98 Kan. 804, 160 Pac. 223; *State v. Browning,* 70 S. C. 466, 50 S. E. 185; *People v. Fontuccio,* 73 Colo. 288, 290, 215 Pac. 145.

2. Defendant says that inasmuch as he was still the husband of Lotta when he entered into a ceremonial marriage with Elizabeth, and left Elizabeth as soon as he became cognizant of that fact, he never was the husband of Elizabeth. But from 1921 to 1927 they maintained the relationship of husband and wife, so held themselves out to the world with that intention, were both competent to marry, and both so believed. Nothing more was requisite to a common-law marriage.

"Upon the dissolution of the subsisting marriage by death or by a competent decree of divorce, an intended marriage contracted in good faith by a party thereto prior to the removal of the disability is rendered valid and binding by the continued cohabitation of the parties to such union, as the original intention to become husband and wife, is presumed to continue so as to effectuate a valid common law marriage." 38 C. J. p. 1297, sec. 51; *Poole v. People,* 24 Colo. 510, 514, 52 Pac. 1025, 65 Am. St. Rep. 245.

Hence when defendant married Maude he was the common-law husband of Elizabeth. He could not put off that status like an old coat merely because of the discovery that, through his own gross indifference to a most solemn obligation, he and Elizabeth had lived together unlawfully, though innocently, for some two years.

3. After deliberating for some time the jury sent to the court the following written statement, signed by its foreman: "The jury has been unable to reach a verdict due to difference of opinion as to interpretation of instruction No. II relating to common-law marriage." Thereupon the jurors were brought in (defendant being present), and the additional written instruction given, which instruction clearly sets forth the law as announced in the preceding paragraph of this opinion. Defendant says this was error because it is provided by section 7104, C. L. 1921, that the instructions must be given in writing before argument. But the following section provides that the trial Judge "shall in no case, after instructions are given, *orally* qualify, modify, or in any manner explain the same to the jury." Defendant's interpretation strikes the word "orally" from the last quoted portion of said section 7105, and would prohibit the trial court from in any manner correcting any error or omission, however grievous and prejudicial, not discovered before argument. The contention is without merit.

Finding no reversible error in the record the judgment is affirmed.