This is an application for a writ of habeas corpus. The petitioner in July 1935 was on trial in the district court charged with the commission of a felony. One of the jurors became seriously ill with a stroke of paralysis and it was necessary to excuse this juror. The trial judge in open court in the presence of the state's attorney, the defendant, and the defendant's attorneys stated the condition of the juror, and the state's attorney, the attorneys for the defendant, and the defendant himself stated there was no objection to his discharge. After some further discussion all of the parties including the defendant affirmatively agreed that the trial should continue with the remaining eleven jurors. The jury was then called in and the trial judge said:
"Gentlemen of the Jury, at the request of and the consent of the defendant we will proceed in this case with eleven jurors, excusing Mr. Armstrong, who has become very ill during the night time and is absolutely unable to serve and is not likely to be able to serve during this term of court, he being practically unconscious at this time, so his physician tells me, and so we will proceed with and conclude this trial with eleven jurors instead of twelve, . . .
"It is further ordered that in accordance with the consent and request of the defendant the trial proceed with the remaining eleven *Page 558 
jurors with the same force and effect as if it had been tried by (a jury of twelve)."
After this statement the defendant, his attorneys, and the state's attorney each affirmatively stated in open court and in the presence of the jury that the order was satisfactory. Further testimony was then taken and on a verdict of guilty petitioner was sentenced to the penitentiary to serve an indeterminate term of not less than two and a half years and not more than ten years. The petitioner was duly committed to the penitentiary, where he is now serving the sentence.
He petitioned the district court in and for Burleigh county for a writ of habeas corpus, which was denied, and thereafter he filed a petition for a writ in this court.
Petitioner concedes that the only question that can be considered on an application for a writ of habeas corpus is the question of jurisdiction.
He frankly concedes that in open court, after being informed by the court of his right to have the entire jury discharged and a new jury called, or one juror called to replace the juror discharged and a retrial of the entire case before the jury as newly constituted, that he consulted with his attorneys and decided to continue the trial before the eleven jurors; but it is his contention that all the proceedings relating to the waiver of his trial by twelve jurors were void; that a trial by a jury in a criminal action cannot be waived under § 7 of the Constitution, which reads as follows: "The right of trial by jury shall be secured to all, and remain inviolate; but a jury in civil cases, in courts not of record, may consist of less than twelve men, as may be prescribed by law."
It is well settled in this state that the right of trial by jury, as secured in § 7 of the Bill of Rights, is the right as it existed at common law and under the Federal Constitution in Dakota Territory, including, as one of its essential incidents, the unanimous concurrence of twelve jurors in the verdict. Power v. Williams, 53 N.D. 54, 205 N.W. 9; Barry v. Truax, 13 N.D. 131,99 N.W. 769, 65 L.R.A. 762, 112 Am. St. Rep. 662, 3 Ann. Cas. 191; Smith v. Kunert, 17 N.D. 120, 115 N.W. 76. In other words, a constitutional jury is a jury of twelve, no more and no less, and unquestionably the defendant *Page 559 
was entitled to a trial by a jury of twelve, unless waived with the consent of the state and the sanction of the court.
The only question in the case is, Can the constitutional right to a trial by jury be waived?
This very question was before the Supreme Court of the United States in the case of Patton v. United States, 281 U.S. 276,74 L. ed. 854, 50 S. Ct. 253, 70 A.L.R. 263. In that case one of the jurors because of a severe illness was excused and it was stipulated in open court by the government and counsel for the defendants, defendants personally assenting thereto, that the trial should proceed with the eleven remaining jurors. The defendants were convicted and sentenced to terms of imprisonment in the penitentiary. Appeal was taken to the circuit court upon the ground that the defendants had no power to waive their constitutional right of a trial by a jury of twelve persons. The circuit court of appeals being in doubt certified the following question, namely: "After the commencement of a trial in a Federal court before a jury of twelve men upon an indictment charging a crime, punishment for which may involve a penitentiary sentence, if one juror becomes incapacitated and unable to further proceed with his work as a juror, can defendant or defendants and the government, through its official representative in charge of the case, consent to the trial proceeding to a finality with the eleven jurors, and can defendant or defendants thus waive the right to a trial and verdict by a constitutional jury of twelve men?" The court said:
"The question thus submitted is one of great importance, in respect of which there are differences of opinion among the various lower Federal and state courts; but which this court thus far has not been required definitely to answer. There are, however, statements in some of our former opinions which, if followed, would require a negative answer. These are referred to and relied upon by the defendants.
"The Federal Constitution contains two provisions relating to the subject. Article 3, § 2, cl. 3, provides: `The trial of all crimes, except in cases of impeachment, shall be by jury; . . .' . . . we first inquire what is embraced by the phrase `trial by jury.' That it means a trial by jury as understood and applied at common law, and includes all the essential elements as they were recognized in this country and England when the Constitution was adopted, is not open *Page 560 
to question. Those elements were: (1) That the jury should consist of twelve men, neither more nor less; (2) that the trial should be in the presence and under the superintendence of a judge having power to instruct them as to the law and advise them in respect of the facts; and (3) that the verdict should be unanimous. . . .
"These common-law elements are embedded in the constitutional provisions above quoted, and are beyond the authority of the legislative department to destroy or abridge. What was said by Mr. Justice Brewer in American Pub. Co. v. Fisher, supra. (166 U.S. 464, 41 L. ed. 1079, 17 S. Ct. 618), with respect to the requirements of unanimity, is applicable to the other elements as well:
"`Whatever may be true as to legislation which changes any mere details of a jury trial, it is clear that a statute which destroys this substantial and essential feature thereof is one abridging the right.'
"Any such attempt is vain and ineffectual, whatever form it may take. See Re Debs, 158 U.S. 564, 594, 39 L. ed. 1092, [1106]15 S. Ct. 900. . . .
"It follows that we must reject in limine the distinction sought to be made between the effect of a complete waiver of a jury and consent to be tried by a less number than twelve, and must treat both forms of waiver as in substance amounting to the same thing. In other words, an affirmative answer to the question certified logically requires the conclusion that a person charged with a crime punishable by imprisonment for a term of years may, consistently with the constitutional provisions already quoted, waive trial by a jury of twelve and consent to a trial by any lesser number, or by the court without a jury." The court then reviews the distinction made by the state courts, holding that it is competent for the defendant to waive the continued presence of a single juror who has become unable to serve, while at the same time denying or doubting the validity of a waiver of a considerable number of jurors, or a jury altogether, and the court then states, "But in none of these cases are we able to find any persuasive ground for the distinction.
"Other state courts, with, we think, better reason, have adopted a contrary view. In State ex rel. Warner v. Baer,103 Ohio St. 585, 134 N.E. 786, a person charged with manslaughter had been convicted by eleven jurors. The trial began with a jury of twelve, but, one of *Page 561 
the jurors becoming incapable of service, the trial was concluded with the remaining eleven. In disposing of the case, the state supreme court thought it necessary to consider the broad question `whether the right of trial by jury, as guaranteed by §§ 5 and 10 of the Bill of Rights, can be waived.' After an extensive review of the authorities and a discussion of the question on principle, the court concluded that since it was permissible for an accused person to plead guilty and thus waive any trial, he must necessarily be able to waive a jury trial. . . .
"We come then, to the crucial inquiry: Is the effect of the constitutional provisions in respect of trial by jury to establish a tribunal as a part of the frame of government, or only to guarantee to the accused the right to such a trial? If the former, the question certified to the lower court must, without more, be answered in the negative.
"Defendants strongly rely upon the language of this court in Thompson v. Utah, supra (170 U.S. 343, 351, 42 L. ed. 1061, 1067,18 S. Ct. 620)"; and the court then points out specifically that in that case was "involved the validity of a statute dispensing with the common-law jury of twelve and providing for trial by a jury of eight. There was no contention that the defendant, Thompson, had consented to the trial, but only that he had not objected until after verdict. The effect of an express consent on his part to a trial by a jury of eight was not involved — indeed he had been silent only under constraint of the statute — and what the court said in respect of that matter is, obviously, an obiter dictum." The court quotes at length from the dissenting opinion of Judge Aldrich in the case of Dickinson v. United States (C.C.A. 1st) 159 F. 801, as follows:
"`The aim of the constitutional safeguards in question is a full, fair, and public trial, and one which shall reasonably and in all substantial ways safeguard the interests of the state and the life and liberty of accused parties. Whether the idea is expressed in words or not, as is done in some of the bills of rights and constitutions, a free and fair trial only means a trial as free and fair as the lot of humanity will admit.
"`All will doubtless agree, at least the unquestioned authority is that way, that these protective provisions of the Constitution are not so imperative that an accused shall be tried by jury when he desires to plead *Page 562 
guilty; or that his trial, in the event of trial, shall be held invalid for want of due process of law, based upon the ground that he was not confronted with his witnesses when he had waived that constitutional right and consented to the use of depositions; or because he had not had compulsory process for obtaining witnesses in his favor when he had waived that; or because he had not had the assistance of counsel when he had intelligently refused such constitutional privilege and insisted upon the right to go to trial without counsel; or upon the ground that he had not had a speedy trial when he had petitioned the court for delay; or that his trial was not public when he had consented to, or silently acquiesced in, a trial in a courthouse with a capacity of holding only 12 members of the public rather than 1200.
"`Beyond question, the right of an accused in a case like this to have twelve jurors throughout is so far absolute as a constitutional right that he may have it by claiming it, or even by withholding consent to proceed without that number, and doubtless, under a constitutional government like ours, the interests of the community so far enter into any incidental departure from that number in the course of the trial, as to require the discretionary approval of the court, and that the proper representative of the government should join the accused in consent. . . .
"`In every substantial sense our constitutional provisions in respect to jury trials in criminal cases are for the protection of the interest of the accused, and as such they may, in a limited and guarded measure, be waived by the party sought to be benefited.'
"The record of English and colonial jurisprudence antedating the Constitution will be searched in vain for evidence that trial by jury in criminal cases was regarded as a part of the structure of government, as distinguished from a right or privilege of the accused. On the contrary, it uniformly was regarded as a valuable privilege bestowed upon the person accused of crime for the purpose of safeguarding him against the oppressive power of the king and the arbitrary or partial judgment of the court. Thus Blackstone, who held trial by jury both in civil and criminal cases in such esteem that he called it `the glory of the English law,' nevertheless looked upon it as a `privilege,' albeit `the most transcendent privilege which any subject can enjoy.' Book *Page 563 
3, p. 379. And Story, J., writing at a time when the adoption of the Constitution was still in the memory of men then living, speaking of trial by jury in criminal cases, said:
"`When our more immediate ancestors removed to America, they brought this great privilege with them, as their birthright and inheritance, as a part of that admirable common law which had fenced round and interposed barriers on every side against the approaches of arbitrary power. It is now incorporated into all our state constitutions as a fundamental right, and the Constitution of the United States would have been justly obnoxious to the most conclusive objection if it had not recognized and confirmed it in the most solemn terms.' 2 Story, Const. § 1779.
"In the light of the foregoing it is reasonable to conclude that the framers of the Constitution simply were intent upon preserving the right of trial by jury primarily for the protection of the accused. If not, and their intention went beyond this and included the purpose of establishing the jury for the trial of crimes as an integral and inseparable part of the court, instead of one of its instrumentalities, it is strange that nothing to that effect appears in contemporaneous literature or in any of the debates or innumerable discussions of the time. This is all the more remarkable when we recall the minute scrutiny to which every provision of the proposed Constitution was subjected. The reasonable inference is that the concern of the framers of the Constitution was to make clear that the right of trial by jury should remain inviolable, to which end no language was deemed too imperative. That this was the purpose of the third article is rendered highly probable by a consideration of the form of expression used in the Sixth Amendment.
"`In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . .' . . .
"Upon this view of the constitutional provisions we conclude that article 3, § 2, is not jurisdictional, but was meant to confer a right upon the accused which he may forego at his election. To deny his power to do so is to convert a privilege into an imperative requirement." The court quoted at length from the case of State v. Kaufman, 51 Iowa, 578, 2 N.W. 275, 33 Am.Rep. 148. In that case "Upon the trial, one of the jurors, being ill, was discharged with the consent of *Page 564 
the defendant, and the trial concluded with the remaining eleven. There was a verdict of guilty. Upon appeal the verdict was upheld. The authorities upon the question are reviewed, and in the course of the opinion the court says:
"`A plea of guilty ordinarily dispenses with a jury trial, and it is thereby waived. This, it seems to us, effectually destroys the force of the thought that "the state, the public, have an interest in the preservation of the lives and the liberties of the citizens, and will not allow them to be taken away without due process of law." The same thought is otherwise expressed by Blackstone, vol. 4, p. 189, that "the king has an interest in the preservation of all his subjects."
"`It matters not whether the defendant is, in fact, guilty; the plea of guilty is just as effectual as if such was the case. Reasons other than the fact that he is guilty may induce a defendant to so plead, and thereby the state may be deprived of the services of the citizen, and yet the state never actually interferes in such case, and the right of the defendant to so plead has never been doubted. He must be permitted to judge for himself in this respect. So in the case at bar. The defendant may have consented to be tried by eleven jurors, because his witnesses were then present, and he might not be able to get them again, or that it was best he should be tried by the jury as thus constituted. Why should he not be permitted to do so? Why hamper him in this respect? Why restrain his liberty or right to do as he believed to be for his interest? Whatever rule is adopted affects not only the defendant, but all others similarly situated, no matter how much they may desire to avail themselves of the right to do what the defendant desires to repudiate. We are unwilling to establish such a rule.' . . .
"See also State v. Sackett, 39 Minn. 69, 38 N.W. 733, where the court concludes its discussion of the subject by saying (p. 72):
"`The wise and beneficent provisions found in the Constitution and statutes, designed for the welfare and protection of the accused, may be waived, in matters of form and substance, when jurisdiction has been acquired, and within such limits as the trial court, exercising a sound discretion in behalf of those before it, may permit. The defendants, having formally waived a juror, and stipulated to try their case *Page 565 
with eleven, cannot now claim that there was a fatal irregularity in their trial.'
"It is difficult to see why the fact, frequently suggested, that the accused may plead guilty and thus dispense with a trial altogether, does not effectively disclose the fallacy of the public policy contention; for if the state may interpose the claim of public interest between the accused and his desire to waive a jury trial, a fortiori it should be able to interpose a like claim between him and his determination to avoid any form of trial by admitting his guilt. If he be free to decide the question for himself in the latter case, notwithstanding the interest of society in the preservation of his life and liberty, why should he be denied the power to do so in the former? It is no answer to say that by pleading guilty there is nothing left for a jury to try, for that simply ignores the question, which is not, What is the effect of the pleas? the answer to which is fairly obvious, but, in view of the interest of the public in the life and liberty of the accused, Can the plea be accepted and acted upon, or must the question of guilt be submitted to a jury at all events? Moreover, the suggestion is wholly beside the point, which is, that public policy is not so inconsistent as to permit the accused to dispense with every form of trial by a plea of guilty, and yet forbid him to dispense with a particular form of trial by consent.
"The truth is that the theory of public policy embodies a doctrine of vague and variable quality, and, unless deducible in the given circumstances from constitutional or statutory provisions, should be accepted as the basis of a judicial determination, if at all, only with the utmost circumspection. The public policy of one generation may not, under changed conditions, be the public policy of another."
In the case of State v. Ross, 47 S.D. 188, 197 N.W. 234, the South Dakota court impressed by the soundness of the dissenting opinion of Judge Aldrich in the case of Dickinson v. United States (C.C.A. 1st) 159 F. 801, said:
"Dickinson v. United States, supra, appears to be a leading case in support of appellant's position, and the cases on the subject are cited and reviewed, but it may be observed that to the majority opinion in this case is appended a dissenting opinion by Judge Aldrich in which he maintains the opposite view, which seems to us to be based upon a much better line of reasoning, and is supported by a more formidable *Page 566 
array of authorities. We can see no more reason why a person, accused of a crime cannot waive his right to be tried by a jury of twelve and submit his case to a jury of a less number, than there is why he cannot waive a jury altogether and plead guilty." In that case the defendant was convicted of a misdemeanor; but in the case of State v. Tiedeman, 49 S.D. 356, 207 N.W. 153, the defendant was convicted of a felony by eleven jurors, and on appeal the court said: "Clearly the stipulation was voluntarily entered into on both sides without the slightest fear or compulsion. It was an advantage to both sides not to be put to the trouble and expense of a second trial. If defendant had been acquitted, he would certainly have claimed the verdict was legal. By freely and voluntarily entering into this stipulation and accepting its benefits, he waived his right to a jury of twelve persons. State v. Ross, 47 S.D. 188, 197 N.W. 234; Oborn v. State, 143 Wis. 249, 126 N.W. 737, 31 L.R.A.(N.S.) 966; State v. Frisbee, 8 Okla. Cr. 406, 127 P. 1091.
"The constitutional provision which appellant claims is violated here applies equally to felonies and misdemeanors, and we think this case is ruled by the decision of this court in State v. Ross, 47 S.D. 188, 197 N.W. 234, supra. It is true that case involved a misdemeanor only, but it involved the same constitutional question now before us. We are `unable to see how it is possible to draw a distinction in this respect between misdemeanors and felonies, because the Constitution does not recognize such distinction.' State v. Brownman, 191 Iowa, 608,182 N.W. 834."
There is a conflict in the decisions upon the question of the right to waive a constitutional jury; but we are impressed with the soundness of the decision in the case of Patton v. United States, 281 U.S. 276, 74 L. ed. 854, 50 S. Ct. 253, 70 A.L.R. 263, supra. See note, 70 A.L.R. 279, and the authorities cited in support of it.
If the constitutional provision, preserving the right of trial by jury, was intended as a part of the frame of government and not as a guarantee to the accused, the accused could only be sentenced upon the verdict of a jury, and every law authorizing a plea of guilty would be unconstitutional. It is not necessary that the right of trial by jury should be more than a guarantee to the accused, for so long as it is guaranteed it remains inviolate. No power can take it away from him. *Page 567 
He is not required to demand it. He is entitled to it when he remains mute; but it may be to his advantage to waive it and plead guilty; it may be to his advantage to waive the constitutional number of jurors and continue with a less number. His doing so does not establish a dangerous precedent, as some decisions suggest, for his waiver affects only himself and it is not a precedent for any other case. It is not even a precedent for himself in case of another trial, for in every trial he is entitled to a constitutional jury unless he affirmatively waives it with the approval of the state's attorney and the sanction of the court.
The application for the writ is denied.
CHRISTIANSON, BURR, MORRIS and NUESSLE, JJ., concur.