## GUNTER *v.* DEALER'S TRANSPORT COMPANY

[No. 17,993.  Filed April 3, 1950.  Rehearing denied May 9, 1950. Transfer denied June 14, 1950.]

*Frank Hamilton,* of Greensburg, and *Thomas J. Corey,* of Indianapolis, for appellant.

*Murray, Mannon, Fairchild & Stewart,* of Indianapolis, for appellee.

CRUMPACKER, J.—For some time prior to April 19, 1943, the appellant was the wife of one Jack Lucero of Los Angeles County, California. On said day she was granted an interlocutory judgment of divorce from Lucero by the superior court of said county upon which final judgment was rendered on the 21st day of April, 1944. After said interlocutory judgment was entered and before it became final she went to Yuma, Arizona, with one Odell L. Gunter where they procured a marriage license and were married by a justice of the peace in the presence of witnesses. Before this ceremony was performed the appellant explained to both the clerk who issued the license and to said justice

of the peace, the status of her divorce from Lucero and was informed by each that her intended marriage would be legal anywhere but in California and there also after her divorce became final. After the ceremony she and Gunter went to Phoenix, Arizona, where he was stationed as a member of the U. S. Army Air Force and where they lived together as husband and wife until some time in April, 1944, when he was transferred to La Junta, Colorado. The appellant followed on April 20, 1944, and continued to live with Gunter as his wife until May 21, 1944, when he was sent to a military camp in North Carolina preparatory to being shipped overseas the following December. She did not accompany Gunter to North Carolina but went to Los Angeles where she remained until he returned from Europe in August, 1945. Upon his return they resumed living together as husband and wife until his discharge from the army on November 15, 1945. Gunter then went to Tucson, Arizona, to find work, expecting to send for the appellant when he found a job upon which he could support her. Still in quest of suitable employment he came to Indiana in 1946 and went to work for Dealer's Transport Company, the appellee herein, as a truck driver, and on September 9, 1946, he was killed as a result of an accident growing out of and in the course of such employment. From the date of their attempted marriage in Yuma, Arizona, in November, 1943, until Gunter's death they were each under the impression that said marriage was legal in all states but California and during all of said time conducted themselves as husband and wife and were so regarded in the communities where they lived. During all of the time Gunter was in the army the appellant received an allotment from the U. S. Government of $50 per month as his wife. She was designated as his wife in a policy of insurance issued

by the government and up to three days before his death he wrote to her frequently, always addressing his letters to "Mrs. Odell Gunter."

The appellant's application to the Industrial Board of Indiana for compensation for Gunter's death was denied on the grounds that at the time of his fatal accident "no valid marriage relationship, either ceremonial or common law, existed between the plaintiff and said decedent; that at said time the plaintiff was neither living with nor being supported by the said decedent, either wholly or partially within the meaning of the Workmen's Compensation Law of Indiana."

The parties to this appeal agree that an interlocutory decree of divorce merely postpones the dissolution of the marriage until it becomes final and therefore the appellant was incapable of contracting a valid marriage at the time of the alleged ceremony at Yuma, Arizona, in November, 1943. They also agree that common law marriages are recognized in Colorado and Indiana but not in California or Arizona. It is apparent therefore that the appellant's residence with Gunter in Arizona, as man and wife, was illicit even though unintentionally so. The day after they moved to Colorado, a state where common law marriages are recognized, her divorce became final and no impediment to her marriage thereafter existed.

Thus it seems to us that the fundamental question for decision is this: Does cohabitation and reputation, after the removal of the impediment to the validity of a ceremonial marriage, contracted in the mistaken belief of both parties that it was legal, establish a valid common law marital status which came into being when the legal impediment ceased to exist? We find an exhaustive note on the subject in 104 A. L. R. 6, in which the author states the general rule announced by the courts of the United States, England,

Canada and 29 of our sister states, including Colorado, to be as follows: "If the parties desire marriage and do what they can to render the union matrimonial, but one of them is under a disability, their cohabitation thus matrimonially meant, and continued after the disability is removed, will, in law, make them husband and wife from the moment that such disability no longer exists, although there are no special circumstances to indicate that the parties expressly renewed their consent . . . after the removal of the impediment." The rule is stated in 55 C. J. S., Marriage, § 36, p. 879, as follows: "As a general rule continued cohabitation after the removal of an impediment to an invalid marriage which the parties contracted in good faith creates a valid informal or common-law marriage in jurisdictions which recognize such marriages." It would seem that this rule fits the present factual situation in all particulars. The appellant and the decedent Gunter desired marriage as is indicated by their procuring a license for such purpose and being married by a justice of the peace under the impression that the ceremony constituted a legal and binding contract. From that moment on their cohabitation was matrimonially meant. Neither thought it was illicit nor considered it to be adulterous. They were so living in Colorado, a state which recognizes common law marriages, when the impediment to their marriage was removed, and they continued to so live until the decedent was transferred from Colorado preparatory to being sent overseas. After the war was over they resumed cohabitation with matrimonial intent until the decedent left to find such employment as would enable him to send for and support the appellant whom, up to the moment of his death, he considered to be his lawful wife. As the general rule, above stated, prevails in Colorado, (*Poole* v. *The People* (1898), 24

Colo. 510, 52 Pac. 1025; *Mock* v. *Chaney* (1906), 36 Colo. 60, 87 Pac. 538; *Davis* v. *People* (1928), 83 Colo. 295, 264 Pac. 658) we are constrained to hold that the appellant and Gunter were married in that state, at common law, on April 21, 1944, and that such marriage was not dissolved until Gunter's death. The validity of the marriage, being governed by the law of the place of its celebration, must be recognized in Indiana as a matter of comity. *Roche* v. *Washington* (1862), 19 Ind. 53, 57; 55 C. J. S., Marriage, § 4, p. 811; 35 Am. Jur., Marriage, § 168, p. 285.

The appellee contends, however, that the appellant's cohabitation with the decedent in Colorado, under matrimonial repute, was of too short a duration to establish a marriage at common law, or to raise an inference of one, and that their conduct in Arizona and California is unimportant as common law marriages are not recognized in those states. We find no law to the effect that cohabitation under the reputation of matrimony is a common law marriage if it is long, continuous and permanent but meretricious if it is short and intermittent. *Langdon* v. *Langdon* (1933), 204 Ind. 321, 183 N. E. 400. A long and notorious relationship under matrimonial repute may be more convincing evidence of a marriage contract than a short one but it is not controlling. Chancellor Kent says: "No peculiar ceremonies are requisite by the common law to a valid celebration of marriage. The consent of the parties is all that is required." 2 *Kent's Com.* 87. Habit and reputation are evidence of mutual consent. An illicit relationship, entered into without intention to marry, cannot ripen into a valid marriage no matter what its reputation may be or how long it may continue devoid of such intention. On the other hand if the relationship is entered into with the intention to effect an immediate marriage and the purpose

to unite as husband and wife exists in the minds of both parties followed by an open acknowledgment of the marital status, a common law marriage exists regardless of the period of its duration. *Teter* v. *Teter*, (1885), 101 Ind. 129.

We quote Judge Elliott in the Teter case as follows: "There can be no doubt that the parties in this instance never contemplated anything else than marriage, and the mutual consent was manifested in the formal marriage of 1871, and was clearly expressed in the declarations and conduct from that day until the relation was dissolved by Mrs. Clayton's death. The circumstances lead with almost irresistible force to the conclusion that the mutual consent to marry was given after, as well as before, the divorce was obtained from Clayton's first wife. If no form of words is essential to express the consent when the marriage is first contracted, we can see no more reason why any should be needed to continue the relation after the removal of an impediment existing at the time of the formal celebration of the marriage. It would be more consistent with logical principles to hold that the subsequent cohabitation as husband and wife is referable to the consent expressed at the commencement of the connection between the parties, than to hold that it was an adulterous commerce, unsanctioned by marriage." With the change of a name and date this identical language is applicable to the facts in the case before us and indicates that the Colorado rule is not repugnant to the law of Indiana.

It is true that the appellant's and decedent's life together was short and intermittent and not altogether harmonious. At times, during periods of separation, the decedent feared that the appellant had grown tired of him and might seek a divorce. All these things, however, can no more dissolve a common

law marriage than one performed with benefit of clergy under the authority of a license issued by the state.

As the appellant's cause of action accrued prior to the 1947 Amendment of Burns' 1940 Replacement, § 40-1403, a common law marriage of five years duration is not necessary to qualify her as a wife and widow. Having concluded that "no valid marriage relationship, either ceremonial or common law, existed between the plaintiff and the decedent" the Industrial Board made no finding of facts upon which it can be determined, in view of their separation, whether or not the law of Indiana imposed an obligation on the decedent to support the appellant at the time of his death.

The award is reversed and the cause remanded for further proceedings consistent with the views expressed herein.

NOTE.—Reported in 91 N. E. 2d 377.