No. 16,344.

MUNSELL ET AL. *v.* THE PEOPLE.
(222 P. [2d] 615)

Decided September 18, 1950.

Mr. Wm. Albion Carlson, Mr. John J. Dooley, for plaintiffs in error.

Mr. John W. Metzger, Attorney General, Mr. Raymond B. Danks, Assistant, for the people.

*En Banc.*

Mr. Justice Alter delivered the opinion of the court.

Leon D. Munsell, alias L. Munsell, and Marjorie E. Munsell, alias Mrs. M. E. Munsell, were charged with a violation of section 222, chapter 48, '35 C.S.A., commonly known as our confidence game statute, and also in the information Leon D. Munsell was charged with being "an habitual criminal" in four separate counts, under the provisions of chapter 114, page 310, Session Laws Colorado, 1945, section 555 (1), chapter 48, 1949 Cum. Supp., '35 C.S.A., commonly designated as the habitual criminal act. Both were found guilty of a violation of the confidence game statute and sentenced to terms in the penitentiary. They are here seeking a reversal by writ of error.

We will hereinafter refer to Leon D. Munsell, alias L. Munsell, as Leon, and to Marjorie E. Munsell, alias Mrs. M. E. Munsell, as Marjorie. At the trial neither defendant was sworn and examined, and neither offered any evidence.

The undisputed evidence disclosed that Marjorie, late on Saturday morning, March 22, 1947, opened a joint checking account for herself and Leon by depositing twenty dollars in the Greeley National Bank. She took the signature card with her, stating that her purpose in so doing was to obtain the signature of Leon. At the same time, "she said she was having some money trans-

ferred to the Greeley National Bank, and she wanted to open an account with $20, so that her account would be opened when the money came in." In the afternoon of the same day Leon entered the Gregory Clothing Company store at Greeley with the avowed purpose of purchasing a size 46 suit of clothing and introduced himself to the manager of the Gregory company as a representative of a brewery, having in mind the establishment of a branch in Greeley. He stated that he and his wife, Marjorie, were temporarily residing in a cottage camp until they could find some other quarters or a house in Greeley, where it was their intention to remain and establish a residence. Leon also represented that he was a member of the Elks lodge and had been at the lodge room visiting with some of the members there; that he planned to attend an Elks convention then in session, and for that reason desired to purchase a new suit. His reason for not consummating the purchase of the suit was stated to be that his wife carried the check book and that the suit could not be bought without her consent. Later in the afternoon Leon and Marjorie appeared at the clothing store, and after some inquiries as to the suit, she rather reluctantly consented to its purchase, together with some other articles of merchandise. Marjorie wrote a check for the sum of $65.79, and in so doing casually shoved the checkbook over where the manager of the clothing store could see it, and the stub showing a balance in excess of $600. Subsequently and on the afternoon and evening of Saturday, March 22, 1947, similar representations were made to six other business men in Greeley by Leon or Marjorie, and, as a result thereof, other goods of the approximate value of $200 were obtained by issuing in payment therefor checks drawn on the Greeley National Bank.

There also was introduced in evidence a check drawn on the West Side National Bank of Yakima, Washington, in the sum of fifty dollars, made payable to the Park Church, a religious institution in Greeley, Colorado, the

check being signed by Leon and dated March 21, 1947, payment of which was refused.

One of the merchants who had received a check for $21.68, upon learning that the checking account of the defendants was $1.68 short, made a deposit of that amount to the credit of the account and cashed his check, leaving no balance therein. Payment of all other checks was refused.

In opening the joint account with the Greeley National Bank, Marjorie represented their residence as 1329 Fourth St., Greeley; on one of her checks her address is given as Route 85, Box 182, Greeley; on another check it is stated to be Hoover Motel Camp, Greeley. The check forming the basis of the charge in the information was number 38.

During the night of March 22, 1947, Leon cashed his check at a liquor store in Brush, Colorado, for $13.85, with part of the proceeds of which he purchased two bottles of whiskey. Sometime late in January, 1949, defendants were apprehended at Phoenix, Arizona, where they had assumed the name of Combs.

The undisputed evidence was that Leon was not the representative of a brewery; was not an Elk; was not contemplating the opening of a branch of the brewery in Greeley, and was not purposing to take up his residence there. The evidence further conclusively established the fact that the only money ever deposited by Leon or Marjorie in the Greeley National Bank was the twenty dollar deposit made sometime during the business hours of March 22, 1947, and that the notation on the stub of the checkbook indicating a balance of $600 in the Greeley National Bank was fictitious and false.

An officer testified that Leon admitted to him a former conviction of the crime of forgery, second degree, in the state of New York and that he had served his sentence in the Elmira State Reformatory; that he had been convicted of a felony in the state of California and was sentenced to the California State Prison at San

Quentin; that he was convicted of the crime of forgery in the state of New York and served a sentence in the Auburn State Prison; also that he had been convicted of obtaining money under false pretenses in Connecticut and had served his sentence in the penitentiary of that state. The documents respecting three of these convictions lack the necessary proof to make the same admissible in evidence, and, although the trial court held evidence of one of the former convictions admissible, this, the trial court held, under the provisions of the 1945 amendment, supra, was insufficient upon which to impose an additional term in the penitentiary. If, in so holding, the trial court was in error, it was error committed in Leon's favor, of which he cannot now successfully complain.

The court found that the "conduct [of defendants] was a fraudulent scheme to obtain the confidence of the officers and employees of the Gregory Clothing Company, and the representations and conduct by the defendants was co-ordinated by and between them to obtain and take advantage of the confidence thus obtained; that in all said acts and conduct, each defendant was accessory to the other; that the defendant, Leon D. Munsell, was not an Elk, and was not a representative of the beer or brewing company, and the entire transaction and scheme, as further shown by many concurrent transactions in and about Greeley, was a studied plan and scheme to obtain the confidence of merchants and others to obtain money or property by means of bogus checks, and a part of said scheme; in fact, a deposit of only twenty dollars had been made at the bank upon which the check involved was written, and a bank book and check book thus obtained; that the check given involved here in exhibit A [check for $65.79] was far in excess of the bank deposit; and especially so in view of many other similar checks dated and passed as of the same date; that said check exhibit A was at the time it was made and delivered spurious and sham and bogus

and false, in that there were no funds or credit at the bank with which to meet the same; the maker had no reason to believe that the same would be honored by the bank.

"Generally, the conduct of and the representations made by the defendants constituted a swindling operation in which the confidence of the victim was obtained and then advantage was taken of such confidence by obtaining the property by means of a false check."

The grounds for a motion for a new trial, as well as assignments of error here, are: 1. The findings and judgment are not supported by the evidence; 2. the judgment is contrary to the law; 3. the court erred in overruling defendants' motion to dismiss the first count in the information charging a violation of the confidence game statute. There are two other assignments with particular reference to the habitual criminal act, but inasmuch as the court held that that act had no application here, and we find no sentence or judgment based thereon, these two assignments will be disregarded.

We have related the evidence in this case at greater length than usual because a study of the elaborate and exhaustive brief filed by defendants' counsel convinces us that the assignments of error considered here all present but one question, namely: Was the undisputed evidence here sufficient to establish beyond a reasonable doubt that defendants were guilty of the offense charged in the first count of the information?

The statute under which the first count in the information was drawn is section 222, chapter 48, '35 C.S.A., and reads in part: "Every person who shall obtain, or attempt to obtain, from any other person or persons, any money or property by means of or by use of brace faro, or any false or bogus checks, or by any other means, instrument or device, commonly called confidence games, shall be liable to indictment.* * * "

In *Kelly v. People,* 121 Colo. 243, 215 P. (2d) 336, we approved the following instruction: "To constitute the

offense of 'confidence game,' the money or property must have been obtained, or the attempt thereto made, by some false or bogus means, token, symbol or device, as distinguished from mere words, however false and fraudulent. Such offense is not necessarily limited to obtaining money or property by means of, or by use of brace faro, or any false or bogus checks, *but includes any swindle perpetrated, by any means, tokens, symbol or device, which is deceitful and illegitimately used to gain the confidence of the person thereby defrauded."* (Italics ours)

In *Kelly v. People, supra,* we quoted at length from our opinion in *Elliott v. People,* 56 Colo. 236, 138 Pac. 39, which decision has been cited consistently with approval by this court, and is now established law in this jurisdiction. In *Elliott v. People, supra,* we find the following, taken from *Wheeler v. People,* 49 Colo. 402, 113 Pac. 312: " 'Confidence game' can hardly be defined in a manner which would cover all cases for the reason that schemes, the purposes of which is to swindle others, are, as has been frequently stated, 'as various as the mind of man is suggestive.' Generally speaking it is a swindling operation by means of which advantage is taken of the confidence reposed by the victim in the swindler. The offense intended to be covered by the statute is obtaining money by means or use of that which is false or bogus."

In *People v. Lindsay,* 119 Colo. 248, 202 P. (2d) 951, the giving of a short check became the basis for filing an information under the confidence game statute, and we there affirmed the judgment of the trial court in directing a verdict for the defendant. On the question of short checks we said:

"It is apparent that the use of the word 'false' or 'bogus' check in the 'confidence game' statute means something more than the mere making and passing of the check. *The manner of passing it and other circumstances connected with the obtaining of money thereon*

*necessarily must enter into the occasion before it may be considered a part of a confidence game.*

"There is no evidence in the case before us that the defendant resorted to any fraudulent scheme by which he sought to obtain the confidence of the complaining witness, or that any special confidence was reposed in the defendant. * * * There was nothing false or bogus about the check, and it was not used by the defendant as a confidence man as a device employed in a scheme to obtain the confidence of the complaining witness, as is sought to be covered by the 'confidence game statute.' "⸜ (Italics ours)

The evidence in the instant case indubitably stamps the opening of the joint checking account in the Greeley National Bank at the time and in the manner as hereinbefore recited as a part of a scheme and plan to be used in gaining the confidence of others, and, having gained their confidence, to defraud them. Every act and every utterance of defendants in their business transactions with Greeley merchants might well be characterized as "window dressing" for the purpose of obtaining their confidence, and in this they were successful. It should be noted that section 224, chapter 48, '35 C.S.A., provides that our confidence game statute (section 222, supra) should be liberally construed. Parenthetically, we might state that liberal construction is not necessary in the instant case for the facts and circumstances disclose that the scheme, plan and device used by defendants in connection with their business transactions was in furtherance of a well-conceived plan by which the confidence of those with whom they dealt was obtained.

■ ■ It should be noted that upon arraignment the defendants entered a plea of not guilty, and upon the trial expressly waived a jury. Trial was had before the court on defendants' plea of not guilty, resulting in their conviction and sentence to the state penitentiary. Although the question was not raised by any assignment of error, this court, on its own motion, required both the

people and the defendants to submit briefs and authorities on the question of the right of the trial court to thus proceed. Because the question is one of first impression in this court, we deem it advisable to express our opinion thereon.

Section 16, article II of the Constitution of the State of Colorado, provides: "That in criminal prosecutions the accused shall have the right to appear and defend in person and by counsel; to demand the nature and cause of the accusation; to meet the witnesses against him face to face; to have process to compel the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed."

Section 23, article II of our Constitution as amended (1945 Session Laws, page 424) provides: "The right of trial by jury shall remain inviolate in criminal cases; but a jury in civil cases in all courts, or in criminal cases; in courts not of record, may consist of less than twelve persons, as may be prescribed by law. * * * "

Section 2 (3), Article III of the Constitution of the United States, provides: "The trial of all crimes, except in cases of impeachment, shall be by jury; and such trial shall be held in the state where the said crime shall have been committed; * * *."

The Sixth Amendment to the Constitution of the United States provides: "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have the assistance of counsel for his defense."

In construing section 2 (3), article III of the Constitution of the United States, it has been held that a defend-

ant in a felony case in the federal court may waive his right to trial by a constitutional jury of twelve men or may waive a jury, and, upon his plea of not guilty, to be tried and sentenced by a trial judge. *Patton v. United States,* 281 U.S. 276, 50 Sup. Ct. 253, 74 L.Ed. 854, 70 A.L.R. 263; *Adams v. United States ex rel.,* 317 U.S. 269, 63 Sup. Ct. 236, 87 L.Ed. 268, 143 A.L.R. 435. This procedure was followed in *Cleveland v. United States,* 329 U.S. 14, 67 Sup. Ct. 13, 91 L.Ed. 12.

Section 5, article II of the Constitution of Illinois, provides: "The right of trial by jury as heretofore enjoyed shall remain inviolate. * * * "

In construing this constitutional provision, it was held that in a murder case the defendant might enter a plea of not guilty, waive his right to a trial by jury, and be tried by the court; and sentence pronounced thereon was upheld. *People v. Washington,* 397 Ill. 122, 73 N.E. (2d) 275.

Under constitutional provisions similar to our own to make their decisions pertinent here, the right of a defendant to enter a plea of not guilty, waive trial by jury, and consent that the same be before the court, has been upheld in *Fluty v. State,* 224 Ind. 652, 71 N.E. (2d) 565; *People v. D'Angustino,* 402 Ill. 203, 83 N.E. (2d) 695; *Zellers v. State,* 138 Fla. 158, 189 So. 236; *Fowler v. Hunter,* 164 F. (2d) 668; *State v. Hernandez,* 46 N.M. 134, 123 P. (2d) 387; *Re Kortgaard,* 66 N.D. 555, 267 N.W. 438; *Rose v. State,* 177 Md. 577, 10 A. (2d) 617.

We find no decision in this jurisdiction directly in point, but in *Davis v. People,* 83 Colo. 295, 264 Pac. 658, we were called upon to construe section 16, article II of our Constitution, hereinbefore set forth, the terms of which are as mandatory as those of amended section 23 of said article, and therein we said that the provision of the Constitution affording the defendant a right to a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed conferred a right solely for the benefit of the accused,

and by proceeding to trial he had waived his right to a trial by an impartial jury in the county where the offense was allegedly committed as irrevocably as he might have done by express words. In other words, we so construed the constitutional provision, supra, as conferring upon a defendant the right to be tried in the county in which the offense was committed, but held in effect that the constitutional provision was for the sole benefit of the defendant and was a right which he could waive.

Amended section 23, article III of the Constitution of the State of Colorado, confers upon a defendant the absolute and unquestioned right to trial by jury, but if the defendant is privileged to enter a plea of guilty, and a proper sentence thereupon can be imposed by the court, it is an anomalous situation if he may not enter a plea of not guilty and submit his cause to a court.

We are cognizant of a statutory provision which requires a jury to impose sentence in first degree murder cases, and nothing herein should be construed as countenancing the waiver of a jury where the charge is murder of the first degree.

Under our constitutional provisions, we hold that a defendant may waive his right to a trial by jury, and on a plea of not guilty be tried by the court, and, if found guilty, a valid sentence may be pronounced thereon.

Under the law, as well as the facts and circumstances disclosed by the record here, the defendants were given a fair and impartial trial, and their guilt was proven beyond any doubt.

Accordingly, the judgment is affirmed.

Mr. Chief Justice Hilliard does not participate generally, but as to the disposition of the point posed by the court on its own motion, he dissents.