**Emma McPEEK, Carroll Vantyle, and Brenda Allen, Appellants–Plaintiffs,**

v.

**Charles McCARDLE, Appellee–Defendant.**

**No. 58A01–0609–CV–400.**

Court of Appeals of Indiana.

May 17, 2007.

---

Leanna Weissmann, Lawrenceburg, IN, Attorney for Appellants.

Alison T. Frazier, Dupont, IN, Attorney for Appellee.

## OPINION

BAKER, Chief Judge.

Appellants-plaintiffs Emma McPeek, Carroll VanTyle, and Brenda Allen (collectively, the Children) appeal from the trial court's dismissal of their complaint seeking a declaratory judgment that the marriage of their mother, Edwina VanTyle McCardle, to appellee-defendant Charles McCardle was void. Additionally, Charles cross-appeals the trial court's denial of his request for attorney fees. Finding that a marriage that complies with all Indiana requirements but fails to comply with the laws of the state in which it is solemnized is valid in this State, and finding no other error, we affirm the judgment of the trial court.

### FACTS

The Children are the natural children of Edwina and Myron VanTyle. Myron died on February 13, 1994, and, following his death, Edwina became the sole owner of a farm that had been in the family for at least three generations.

On June 21, 1994, the Clerk of the Ohio Circuit Court issued a valid marriage license to Edwina and Charles. On June 30, 1994, Edwina and Charles participated in a marriage ceremony performed by the Reverend Don Campbell in the State of Ohio. Although authorized by his church to solemnize marriages, Reverend Campbell had not obtained the requisite license to solemnize marriages in Ohio. No ceremony took place in Indiana and no marriage license was issued in Ohio. On July 1, 1994, the Clerk of the Ohio Circuit Court filed and recorded the marriage license.

On August 3, 1994, Edwina deeded the family farm to herself and Charles, as husband and wife. Edwina died intestate on July 26, 2004. On December 30, 2004, the Children filed a complaint seeking a declaratory judgment that the marriage of Edwina and Charles was void such that the Children, rather than Charles, are the proper owners of half of the family farm. On October 31, 2005, Charles filed a motion to dismiss the complaint, arguing that the Children did not have standing to dispute the validity of the marriage because it was voidable rather than void. The trial court agreed and dismissed the complaint on August 8, 2006, concluding, among other things, as follows:

6. The requirements of Indiana law with respect to the issuing and record-

ing of the marriage license were followed in this case.

7. Indiana law does not require parties who obtain a marriage license from the Clerk of the Circuit Court of their county of residence to have their marriage solemnized in the State of Indiana.

\* \* \*

10. The Court finds that the major issue involved in this case is not whether or not the marriage was performed in compliance with Indiana law. It seems clear from the stipulation of facts presented by the parties that the marriage was not entered consistent with proper Indiana procedure.... The major issue involved in this case is whether or not following the death of [Edwina] that the plaintiffs can seek to attack the marriage purportedly entered on June 30, 1994.

11. ... The weight of authority regarding this issue is that the validity of a marriage is open to attack following the death of one of the parties when the marriage would be considered void as opposed to voidable.... The weight of legal authorities indicate that marriages which are voidable may not be attacked after the death of one of the parties unless statutes indicate otherwise.

12. The Court has also considered applicable Indiana statutes which declare certain marriages to be void or voidable.... None of these statutes appear to fit the factual circumstances presented to the Court and, therefore, none of these particular code sections appear to formally declare the purported marriage in this case to be void as opposed to voidable. The Court, therefore, finds, under these particular circumstances, that the marriage of the parties, although not properly entered under Indiana law, would be voidable and not

void and therefore would not be subject to collateral attack under Indiana law by the Plaintiffs.

\* \* \*

14. Plaintiffs lack standing to bring this declaratory judgment action.

15. Plaintiffs' cause of action should be dismissed.

Appellants' App. p. 6–7. The trial court also denied Charles's request for attorney fees. The Children appeal the dismissal of their complaint and Charles cross-appeals the denial of his request for attorney fees.

### DISCUSSION AND DECISION

■ As we consider the Children's argument that the trial court improperly dismissed their complaint, we observe that we afford no deference to the trial court's order dismissing a complaint. *Prairie Material Sales, Inc. v. Lake County Council*, 855 N.E.2d 372, 374 (Ind.Ct.App.2006). Viewing the complaint in the light most favorable to the nonmovant, we must determine whether the complaint states any facts upon which the trial court could have granted relief. *Id.*

■ Indiana requires that before two people may marry, they must obtain a marriage license from the clerk of the circuit court of either individual's county of residence. Ind.Code §§ 31–11–4–1,–3. The individuals must then present the marriage license to a person who is authorized to solemnize marriages. I.C. § 31–11–4–13. Marriages may be solemnized by, among others, a member of the clergy of a religious organization. I.C. § 31–11–6–1(1). The marriage license issued by the clerk of the circuit court at issue is the legal authority for an authorized individual to marry the betrothed couple. I.C. § 31–11–4–14. The person solemnizing the marriage must complete a marriage certificate and file the certificate

and license with the clerk of the circuit court that issued the license; the clerk must then record the certificate and license. I.C. § 31–11–4–16. The individuals are not required to solemnize their marriage in Indiana so long as the above requirements are fulfilled.[1]

▮ Here, it is undisputed that Edwina and Charles complied with the requisite statutes in obtaining and filing their Indiana marriage license and certificate with the clerk of the Ohio County Circuit Court.[2] It is also undisputed that Reverend Campbell could have solemnized the marriage under Indiana law had the ceremony taken place in this State. The only question, therefore, is whether the officiant's failure to obtain the requisite license to marry the couple in Ohio—notwithstanding the fact that he was statutorily authorized to perform Indiana marriage ceremonies—and the couple's failure to obtain an Ohio marriage license—notwithstanding the fact that they properly obtained an Indiana marriage license—render the marriage void.

The Children argue that Indiana should treat the marriage as void because the ceremony took place in Ohio but did not comply with Ohio law. Specifically, they contend that if Indiana recognizes this marriage, we will effectively be reviving the long-extinct doctrine of common law marriage. That is simply untrue, however, inasmuch as Charles and Edwina complied precisely with all Indiana marriage requirements. In no way is their relationship analogous to a common law marriage; consequently, this argument must fail.

The Children also make a slippery slope argument, cautioning that if we affirm the trial court,

> Indiana residents could circumvent our marriage laws merely by going into another state and having a ceremony performed on their Indiana license. Then Indiana would be forced to recognize other jurisdiction [sic] marriages which do not comply with the law. Couples could be married in Alaska by a ten-year-old child and the marriage would be valid if this Court adopts [Charles's] argument.

Reply Br. p. 3.

This argument entirely misses the point and turns the case on its head. Here, every single action taken by Charles and Edwina *did comply with Indiana law.* They obtained an Indiana marriage license and an Indiana marriage certificate. They took part in a marriage ceremony in Ohio, which is perfectly acceptable under

---

1. We acknowledge that the blank marriage license and certificate forms provided by the State assume that the ceremony will take place in Indiana, inasmuch as the space for "county" is left blank but the form is pre-printed with "Indiana," leaving no space to designate a different state as the site of the ceremony. I.C. § 31–11–4–15. We conclude herein that the ceremony need not take place in Indiana because the Indiana Code does not require it to do so. We observe, however, that *even if* there is a binding presumption that Indiana marriage ceremonies must, in fact, take place in this State, the parties' failure herein to solemnize their marriage in Indiana renders their marriage voidable, rather than void. *See* I.C. § 31–11–8–1 et seq. (explicitly describing circumstances leading to a void marriage, none of which have occurred herein). Consequently, only Edwina or Charles would have been able to challenge their marriage; the Children have no standing to do so. *See* W.W. Allen, *Right to Attack Validity of Marriage After Death of Party Thereto,* 47 A.L.R.2d 1393.

2. The Children complain that the license erroneously states that the ceremony took place in Indiana. But an error caused by the officiant failing to complete the license properly is subject to challenge *only* by the parties to the marriage. I.C. § 31–11–4–17(a). Thus, the Children have no standing to raise this argument.

Indiana law. Their officiant was authorized under Indiana law to perform the ceremony. The officiant completed and filed the license and certificate, which the clerk then recorded. Thus, affirming the trial court's judgment in no way takes us down a slippery slope that would result in Indiana having to acknowledge marriages that would otherwise violate Indiana statutes or public policy. In this case, the parties complied precisely with Indiana statutes and public policy. The *only* question, therefore, is whether a technical failure to comply with *Ohio* law should cause an otherwise perfectly valid Indiana marriage to be void.

 It is generally true that the validity of a marriage is determined by the law of the place of its celebration. *Gunter v. Dealer's Transp. Co.*, 120 Ind.App. 409, 414, 91 N.E.2d 377, 379 (1950). Nearly always, however, this rule is applied to uphold an out-of-state marriage that would otherwise be invalid pursuant to Indiana law or public policy. *See, e.g., Mason v. Mason*, 775 N.E.2d 706, 709 (Ind.Ct.App. 2002) (recognizing a Tennessee marriage between first cousins that could not have been entered into validly between Indiana residents). It is illogical to reverse that rule such that a marriage that *would* otherwise be valid in Indiana is void because it is invalid pursuant to a sister state's law or public policy. There is simply no reason, whether based on Indiana statute or public policy, to invalidate a marriage that complies with both. We hold, therefore, that where, as here, a couple has complied with Indiana's requirements regarding marriage licenses, certificates, and solemnizations, their marriage is not void even if the ceremony took place in another state and did not comply with that state's law or public policy.[3] Thus, we conclude that the trial court properly dismissed the Children's complaint.

 Charles cross-appeals, arguing that he is entitled to attorney fees because the Children's action was frivolous and because they relied upon Emma's affidavit in bad faith. Inasmuch as this is an issue of first impression in Indiana, we cannot conclude that the action was frivolous. And there is no evidence that the Children relied upon Emma's affidavit in bad faith, nor is there evidence that Emma maliciously included possibly incorrect information in the affidavit. Additionally, we observe that Charles could have moved to strike the affidavit but did not. Under these circumstances, we conclude that the trial court properly denied his request for attorney fees.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., concurs.

CRONE, J., concurs in result.

---

3. We acknowledge that the Indiana Attorney General reached the opposite conclusion. *See* 2004 Ind. OAG No. 4, 2004 WL 1876176 (Ind.Atty.Gen.2004). It is well established, however, that Attorney General Opinions are without precedential effect and are not binding on this court. *Common Council of the City of Peru v. Peru Daily Tribune, Inc.*, 440 N.E.2d 726, 728 n. 4 (Ind.Ct.App.1982). Thus, we need not, and choose not to, adopt the Attorney General's analysis of this issue.