ATTORNEY FOR APPELLANTS
Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEY FOR APPELLEE
Alison T. Frazier
Dupont, Indiana



## In the
## Indiana Supreme Court

No. 58S01-0708-CV-305

EMMA MCPEEK *(Petitioner Below)*,
CAROLL VANTYLE, AND BRENDA ALLEN,

*Appellants (Plaintiffs below),*

v.

CHARLES MCCARDLE,

*Appellee (Defendant below).*

Appeal from the Ohio Circuit Court, No. 58C01-0412-PL-0005
The Honorable James Humphrey, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 58A01-0609-CV-400

**June 10, 2008**

**Rucker, Justice.**

**Summary**

The question raised in this opinion is whether a marriage solemnized in another state in violation of that state's law may be recognized as valid in this state if the marriage complies with this state's law. The answer is yes.

**Facts and Procedural History**

As a result of her first husband's death, Edwina VanTyle became the sole owner of the family farm located in Ohio County and Switzerland County, Indiana. On June 30, 1994, armed with a marriage license obtained from the clerk of the circuit court in Ohio County, Indiana, Edwina and Charles McCardle, both residents of Indiana, traveled across state lines and were ostensibly married in the state of Ohio. The Reverend Donald S. Campbell performed the wedding ceremony and filled out the marriage certificate. Although Rev. Campbell was apparently authorized by his church to solemnize marriages in the state of Ohio, no marriage license was issued by the state of Ohio. Further, no ceremony took place in the state of Indiana. On July 1, 1994, the clerk of the circuit court in Ohio County, Indiana filed and recorded the marriage license and certificate. Shortly thereafter, in August 1994, Edwina executed a warranty deed transferring ownership of the farm to Charles McCardle and herself as husband and wife.

On July 26, 2004, Edwina died intestate. In December 2004, Edwina's two daughters and one son from her first marriage – Emma McPeek, Brenda Allen, and Caroll VanTyle (referred to collectively as "McPeek") – filed a complaint for declaratory judgment. In the complaint McPeek contended that the marriage between her mother and McCardle was void, and therefore she and her siblings were the proper owners of one-half the farm, which had been in the family for three generations. McPeek also filed a motion for summary judgment.

McCardle responded with a motion to dismiss the declaratory judgment action, contending McPeek was not a party to the marriage and therefore lacked standing to challenge its validity. McCardle also filed a motion seeking attorney fees, contending McPeek's complaint was frivolous and brought in bad faith. After a hearing based on certain stipulated facts alleged in the complaint, the trial court granted the motion to dismiss. In so doing, the trial court agreed that McPeek lacked standing. However, the trial court concluded that the marriage was voidable under Indiana law and the weight of legal authority indicated that such marriages may not be attacked after the death of one of the parties. Noting the significant legal issues in this case, the trial court denied McCardle's request for attorney fees.

McPeek appealed the dismissal of her complaint, and McCardle cross-appealed the denial of his request for attorney fees. The Court of Appeals affirmed the judgment of the trial court. McPeek v. McCardle, 866 N.E.2d 387, 391 (Ind. Ct. App. 2007). Having previously granted McPeek's petition to transfer, we also affirm the judgment of the trial court. We summarily affirm the Court of Appeals' disposition of McCardle's cross-appeal.

## Standard of Review

A claim of lack of standing is properly treated as a motion to dismiss under Indiana Trial Rule 12(B)(6) for failure to state a claim upon which relief can be granted. Huffman v. Office of Envtl. Adjudication, 811 N.E.2d 806, 813 (Ind. 2004). Such a motion tests the legal sufficiency of a claim, not the facts supporting it. Charter One Mortgage Corp. v. Condra, 865 N.E.2d 602, 604 (Ind. 2007). We review de novo the trial court's dismissal pursuant to Indiana Trial Rule 12(B)(6). Id. Viewing the complaint in the light most favorable to the non-moving party, we must determine whether the complaint states any facts on which the trial court could have granted relief. If a complaint states a set of facts that, even if true, would not support the relief requested, we will affirm the dismissal. Id. at 605. And we may affirm the grant of a motion to dismiss if it is sustainable on any theory. Right Reason Publ'n v. Silva, 691 N.E.2d 1347, 1349 (Ind. Ct. App. 1998).

## Discussion

McPeek argues that her mother's marriage to McCardle is void because it was solemnized in the state of Ohio without the benefit of an Ohio marriage license in violation of Ohio Revised Code section 3101.05.[1] McCardle does not respond to this argument head on.

---

[1] McPeek also contends that the marriage was conducted by a minister not authorized to solemnize marriages in the state of Ohio in violation of Ohio Revised Code section 3101.09. To support this contention, McPeek relies on her own affidavit submitted in support of her motion for summary judgment. Appellant's App. at 29-30. McCardle challenged the accuracy of the allegations claiming they were false, and this in part formed the bases for his request for attorney fees. In any event, the trial court did not rule on McPeek's summary judgment motion. Rather, relying on the parties' stipulated facts, which did not include those alleged in the affidavit, the trial court ruled on McPeek's complaint for declaratory judgment, which it dismissed. Accordingly, the McPeek affidavit is not properly before us.

3

Instead he makes the same argument made before the trial court, namely, "once a party to a marriage is dead, her marriage may not be challenged by anyone other than the other party to the marriage." Resp. to Pet. to Trans. at 4. As recounted above, the trial court had a slightly different view. The Court of Appeals pursued a different analysis altogether, ultimately concluding that the judgment of the trial court should be affirmed. We agree with the Court of Appeals' ultimate conclusion. However, our analysis is slightly different than our colleagues.

Unless strong public policy exceptions require otherwise,[2] the law of the place where a marriage occurs generally determines the validity of a marriage. Bolkovac v. State, 229 Ind. 294, 98 N.E.2d 250, 254 (1951); Sweigart v. State, 213 Ind. 157, 12 N.E.2d 134, 139 (1938); Mason v. Mason, 775 N.E.2d 706, 709 (Ind. Ct. App. 2002); Gunter v. Dealer's Transp. Co., 120 Ind. App. 409, 91 N.E.2d 377, 379 (1950). As a corollary, the general rule of law is that a marriage valid where it is performed is valid everywhere. Loughran v. Loughran, 292 U.S. 216, 223 (1934). The converse of this proposition is equally well settled: a marriage void where it is performed is void everywhere.

McPeek insists that her mother's Ohio marriage to McCardle is void. More specifically, according to McPeek, "[b]ecause the McCardle union which took place in Ohio did not meet the legal requirements for a lawful marriage to exist under Ohio law, Indiana must give Full Faith and Credit to the Ohio law and recognize that a lawful marriage did not occur and that their relationship was nothing more than a void common law marriage." Pet. to Trans. at 7. However, our research reveals no authority declaring that a marriage solemnized in the state of Ohio without the benefit of a marriage license obtained from that state is considered a void marriage. Instead Ohio, like Indiana, draws a distinction between marriages that are void in contrast to those that are merely voidable. See 19 I.L.E., Marriage § 16 at 245-46 (2003). According to Ohio law, "There are major conceptual differences between void and voidable marriages. A voidable marriage is one which is valid when entered and which remains valid until either party secures a lawful court order dissolving the marital relationship." Darling v. Darling, 335 N.E.2d 708, 710 (Ohio Ct. App. 1975). Conversely, "a void marriage is invalid from its inception, and

---

[2] See e.g., Ind. Code § 31-11-1-1(b) ("A marriage between persons of the same gender is void in Indiana even if the marriage is lawful in the place where it is solemnized.").

4

the parties thereto may simply separate without benefit of a court order of divorce or annulment." Id. at 710-11. The policy of Ohio is to sustain marriages "where they are not incestuous, polygamous, shocking to good morals, unalterably opposed to a well defined public policy, or prohibited." Mazzolini v. Mazzolini, 155 N.E.2d 206, 208 (Ohio 1958). Thus, Ohio appears to label a defective marriage voidable rather than void, unless such a label is against policy considerations. "A marriage contract is a nullity ab initio *only* where expressly so declared by statute. In such a case it is absolutely void, requiring no judicial decree for its dissolution." Id. at 209 (emphasis added). This jurisdiction has embraced a similar view. See Mason v. Mason, 101 Ind. 25, 27 (1885) ("[A] marriage, contracted in violation [of the statute] . . . is not absolutely void unless declared to be so by the statute under which the order was made.").

Our review of Ohio case and statutory authority has not revealed that a marriage solemnized in that state without the benefit of an Ohio marriage license is void as against public policy. It therefore appears that the Ohio marriage, although defective, was nonetheless valid from its inception under the laws of Ohio and remained so at least until Edwina's death because the parties did not seek dissolution. As indicated earlier, unless strong public policy exceptions require otherwise, the law of the place where a marriage occurs generally determines the validity of a marriage. Bolkovac, 98 N.E.2d at 254.

We acknowledge however that Ohio's court of last resort has not spoken on this subject in fifty years. And the latest reported decision by its intermediate Appellate Court occurred over thirty years ago. We are therefore hesitant to ground the resolution of this case solely on what may or may not be the current law of our sister state. We thus advance an alternative ground as well.

Not all jurisdictions adhere to the general rule that the law of the place where the marriage occurs determines the validity of the marriage. The Restatement (Second) Conflict of Laws § 283(1) (1971) advises, "The validity of a marriage will be determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the spouses and the marriage . . . ." And following the Restatement's guidance several jurisdictions have determined that even if invalid where solemnized, a marriage can be recognized as valid

under the law of the forum state.  See e.g., Donlann v. Macgurn, 55 P.3d 74, 77-79 (Ariz. Ct. App. 2002) (Applying Arizona law to recognize an invalid marriage under the law of Mexico, the court declared that a marriage invalid under the law where the ceremony occurred was valid in Arizona if it would have been valid had the ceremony been performed in Arizona.); Matter of Estate of Murnion, 686 P.2d 893, 898-99 (Mont. 1984) (Applying Montana law, the court recognized a marriage which was invalid in the state of Washington because Washington retained no interest in the case.); In re Estate of Shippy, 678 P.2d 848, 851-52 (Wash. Ct. App. 1984) (Applying Washington law, the court recognized as valid a marriage that was invalid in the state of Alaska and declared that, although the validity of a marriage is generally governed by the law of the state where it is contracted, the state of Washington had a dominant interest in the validity of the decedent's marriage because decedent and wife were domiciled in Washington, decedent's property was located in Washington, and probate proceedings were pending there.). See also John C. Williams, *Recognition by Forum State of Marriage Which, Although Invalid Where Contracted, Would Have Been Valid if Contracted Within Forum State*, 82 A.L.R.3d 1240 (1978) (collecting cases).

We think the foregoing authorities express the better view as applied to this case.  Before and after their marriage, Indiana was the domiciliary of both McCardle and Edwina, and both owned real and personal property in the state of Indiana.  It appears that the only contact the parties had with Ohio is that the ceremony was conducted in that state.  In essence any interest Ohio may have in the McCardles' marriage is overcome by the more substantial interest this state has in recognizing the marriage of the parties who, after all, obviously anticipated that their marriage would be valid.  See Restatement § 283 cmt. i (noting that the basic policy underlying the rule recognizing a marriage even where invalid where contracted is "protection of the justified expectations of the parties").

Accordingly, we measure the McCardles' marriage against Indiana's solemnization provisions.  Before two people may marry in Indiana they must negotiate a multi-step process.  The parties must first obtain a marriage license from the clerk of the circuit court of either person's county of residence.  I.C. §§ 31-11-4-1, -3.  The marriage license issued by the circuit court is the legal authority for an authorized person to marry the betrothed couple.  I.C. § 31-11-

4-14. The parties must then present the marriage license to a person who is authorized to solemnize marriages. I.C. § 31-11-4-13. Marriages may be solemnized by, among others, a member of the clergy of a religious organization. I.C. § 31-11-6-1(1). The person solemnizing the marriage must complete a marriage certificate and file the certificate and license with the clerk of the circuit court that issued the license; the clerk must then record the certificate and license. I.C. § 31-11-4-16.

It is undisputed that Edwina and McCardle complied with the requisite statutes in obtaining and filing their Indiana marriage license and certificate of marriage with the clerk of the Ohio County Circuit Court. And there was no evidence presented to the trial court, and no argument made on appeal, that the couple were married in Ohio with the intent of evading the laws of this state.[3] We conclude that where, as here, a couple has complied with Indiana's statutory requirements regarding marriage licenses, certificates, and solemnization, such that the marriage would have been valid if solemnized in this state, we will recognize the marriage as valid even if the marriage ceremony took place in another state and did not comply with that state's law or public policy.[4] It is worth emphasizing however that a couple intending to use or,

---

[3] Indiana Code section 31-11-8-6 provides:

> A marriage is void if the parties to the marriage:
> (1)    are residents of Indiana;
> (2)    had their marriage solemnized in another state with the intent to
>        (A) evade IC 31-11-4-4 or IC 31-11-4-11 (or IC 31-7-3-3 or IC 31-7-3-10 before their repeal); and
>        (B) subsequently return to Indiana and reside in Indiana; and
> (3)    without having established residence in another state in good faith, return to Indiana and reside in Indiana after the marriage is solemnized.

[4] We acknowledge that the Indiana Attorney General concluded that "compliance with Indiana's statutory requirements has no effect if the marriage does not comply with the legal requirements of the jurisdiction in which the marriage actually occurs." Solemnization of Marriages under Indiana Law, 2004 Ind. Op. Att'y Gen. No. 3 (2004), *available at* http://www.in.gov/attorneygeneral/legal/advisory/opinions.html. However, Attorney General opinions are not binding on the Court. Illinois-Indiana Cable Television Ass'n v. Pub. Serv. Comm'n, 427 N.E.2d 1100, 1111 (Ind. Ct. App. 1981). We do agree however with the following conclusion:

> [A] couple obtaining an Indiana marriage license but intending to be married outside of Indiana should be advised to check the legal requirements of the jurisdiction in which they will be married to

7

as occurred here, has already used an Indiana marriage license for an out-of-state marriage should take the additional step of re-solemnizing their marriage in Indiana in order to avoid future questions about its validity.  <u>See</u> fn. 4.

## Conclusion

The trial court granted McCardle's motion to dismiss based on the lack of standing.  We affirm the judgment of the trial court albeit on a different theory.

Shepard, C.J., and Dickson, Sullivan and Boehm, JJ., concur.

---

determine what is necessary for a legally binding marriage in that jurisdiction.  If a couple intends to use (or has used) an Indiana marriage license for an out-of-state marriage, it is advisable to recommend that the marriage be re-solemnized in Indiana to avoid future question about its validity.

2004 Ind. Op. Att'y Gen. No. 3 (2004).