Karen LONG and Clifford M. Thorson,
Appellants–Plaintiffs,

v.

BIOMET, INC., Appellees–Defendants.

No. 43A03–0803–CV–99.

Court of Appeals of Indiana.

Feb. 13, 2009.

Robert T. Dassow, Hovde Dassow & Deets, LLC, Indianapolis, Daniel J. Vanderpool, Vanderpool Law Firm, P.C., Warsaw, IN, Marc M. Umeda, George C. Aguilar, Shane P. Sanders, Robbins Umeda LLP, San Diego, CA, Kip B. Shuman, The Shuman Law Firm, Denver, CO, Attorneys for Appellants.

Stephen R. Snyder, Randall L. Morgan, Snyder, Birch & Morgan, LLP, Syracuse, IN, Timothy A. Duffy, Kirkland & Ellis, LLP, Chicago, IL, Attorneys for Appellee, Biomet, Inc.

James S. Butts, Law Office of James S. Butts, P.C., Warsaw, IN, Attorney for Individual Defendants.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Karen Long and Clifford M. Thorson ("Plaintiffs") appeal the trial court's order granting the motion to dismiss filed by Daniel P. Hann, Niles L. Noblitt, Jerry L. Ferguson, Charles E. Niemer, Dane A. Miller, Garry L. England, Gregory D. Hartman, James W. Haller, Joel P. Pratt, Bradley J. Tandy, James R. Pastena, Kent E. Williams, C. Scott Harrison, Ray M. Harroff, Jerry L. Miller, Kenneth V. Miller, Gene L. Tanner, Marilyn Tucker Quayle, Thomas F. Kearns, Jr., Sandra A. Lamb, and Bernhard Scheuble ("Defendants") on the derivative action filed by Plaintiffs on behalf of Biomet, Inc.[1]

We affirm.

### ISSUE

Whether the trial court erred in denying Defendants' motion to dismiss because Plaintiffs do have standing to maintain their derivative action.

### FACTS

On September 21, 2006, Plaintiffs filed two substantively identical shareholder—derivative complaints on behalf of Biomet, Inc.—an Indiana corporation, and a public company whose common stock was registered with the SEC and traded on the NASDAQ stock market. Plaintiffs alleged that the named defendants, as Biomet directors and officers, had breached their fiduciary duties by participating in improper stock option backdating during the years 1996–2002.

Thereafter, on December 18, 2006, Biomet announced that it had entered into an agreement, subject to shareholder approval, to sell the company to a consortium of private-equity investors ("the Sponsor Group") for $44.00 per share. Also on

---

1. We heard oral argument on November 5, 2008, in Indianapolis. We commend counsel for their excellent advocacy.

December 18, 2006, Biomet announced that a special committee of its board of directors had concluded that option backdating had occurred and that the resulting errors in accounting for the options might have a material effect on the company's historical and/or current financial statements.

On January 22, 2007, Plaintiffs filed a consolidated amended derivative complaint. It added information about the special committee's finding of stock option backdating and added an additional derivative claim against the Defendants: "breach of fiduciary duty for seeking to indemnify themselves by selling the company at an inadequate price." (App.191).

On February 16, 2007, Defendants filed a motion to dismiss the consolidated complaint, arguing various grounds. Plaintiffs filed a response, opposing the motion to dismiss.

While this motion was pending, on May 25, 2007, the Biomet special committee delivered its final report on Plaintiffs' "claims in the derivative action" of "inappropriate stock option backdating" and "conclude[d] that pursuit of the claims made in the Biomet derivative litigation [wa]s not in the best interests of the Company at this time." (App.391). Aware of Biomet's special committee's final report, on July 12, 2007, the Sponsor Group completed a tender offer under which more than 80% of Biomet's public shareholders had agreed to sell their shares for $46.00 per share. On September 25, 2007, Biomet was merged with a corporate entity ("the Buyer") affiliated with the Sponsor Group; all remaining public shareholders were cashed out at the same price offered to those who tendered their shares. All of Biomet's public shareholders, including Plaintiffs, received a cash payment of $46.00 per share for their stock in Biomet.

As of September 25, 2007, the Buyer became the sole owner of Biomet stock.

On October 12, 2007, Defendants filed a supplemental brief, arguing that as a result of the sale consummated on September 25, 2007, Plaintiffs no longer held any stock in the company and had "lost standing to maintain this derivative lawsuit." (App.249). On November 28, 2007, Plaintiffs filed a responsive brief, arguing that "derivative claims brought before a merger" could continue "after the merger is consummated." (App.284). On December 6, 2007, Defendants filed a reply brief, arguing that the surviving Biomet corporation "still retain[ed] the right to pursue directly the claims made by plaintiffs derivatively," and also noted the earlier decision of the former Biomet's board of directors—after considering the report of the special committee—to not pursue those derivative claims as not being in the best interests of the company. (App.291).

On December 28, 2007, the trial court heard arguments on the motion to dismiss. Defendants argued for dismissal on various grounds, including that pursuant to *Gabhart v. Gabhart*, 267 Ind. 370, 370 N.E.2d 345 (1977), Plaintiffs no longer had standing to maintain their derivative action, inasmuch as they were no longer shareholders. Plaintiffs argued that they were not challenging the price they received for their shares in the merger—but seeking to have "the Defendants give back their ill-gotten gains, . . . their improper gain," and have "distributed to the former shareholders" the "hundreds of millions of dollars" that Defendants had "received unjustly . . . in benefit from insider information and from backdating." (Tr. 25, 26, 33). The trial court asked for statutory authority providing for the remedy sought by Plaintiffs, and additional briefs were filed by the parties.

On February 5, 2008, the trial court granted Defendants' motion to dismiss, holding that Plaintiffs did not have standing to maintain the derivative action. Specifically, it found that because Plaintiffs had received fair market value for their publicly traded shares, which value included "any claim for breach of fiduciary duty or fraud," and were no longer shareholders, they "no longer ha[d] standing to prosecute" the derivative action; and that the derivative claims made by Plaintiffs now belonged to Biomet's new owners. (App.33).

### DECISION

 A trial court's dismissal of an action based on the claimant's lack of standing "is properly treated as" a ruling on "a motion to dismiss under Indiana Trial Rule 12(B)(6) for failure to state a claim upon which relief can be granted." *McPeek v. McCardle*, 888 N.E.2d 171, 173 (Ind.2008). We review de novo the dismissal by a trial court pursuant to Trial Rule 12(B)(6). *Id.* We view the complaint in the light most favorable to the non-moving party, and determine whether the complaint states any facts on which the trial court could have granted relief. *Id.* at 173, 174. If a complaint states a set of facts that, even if true, would not support the relief requested, we will affirm the dismissal. *Id.* Further, we may affirm the grant of a motion to dismiss if it is sustainable on any theory. *Id.*

Plaintiffs first argue that pursuant to *Gabhart v. Gabhart*, 267 Ind. 370, 370 N.E.2d 345 (1977), they may maintain the instant action. In *Gabhart*, the plaintiff asserted that his four fellow shareholders in a closely held corporation had misappropriated corporate funds and wrongfully

denied him access to corporate records, and he later added the claim that they had effected a "freeze out" merger for the sole purpose of stripping him of his interest in the resulting corporation. As to the latter, our Supreme Court held that "in a bona fide merger proceeding, a dissenting or non-voting shareholder is limited to the means provided by statute for the realization of his equity," specifically, the statutory appraisal process. *Id.* at 356. However, it "further h[e]ld that a proposed merger which ha[d] no valid purpose" could be challenged "by procedures other than those provided by statute for that purpose." *Id.* at 356.

 Our Supreme Court turned to the plaintiff's claim seeking "redress for wrongs done to the merged corporation" by the defendants. *Id.* It cited the "well established" principle that "being a shareholder of the corporation whose cause of action is to be enforced in a derivative suit is a prerequisite for standing to sue." *Id.* at 357.[2] It then explained that "[w]hen a corporation is merged out of existence, . . ., its assets and liabilities are transferred to the surviving corporation by operation of law, . . . and the shareholders' interests in the merged corporation come[ ] to an end." *Id.* Thus, any cause of action "passes to the surviving corporation along with the other assets of the merged corporation." *Id.* However, our Supreme Court noted an "equitable limitation upon a surviving corporation's right to succeed to a merging corporation's cause of action," specifically: when "each" shareholder of the surviving corporation "had participated in the wrong complained of." *Id.* Accordingly, it held that "if a merger is effected solely for the purpose of shielding wrongdoers from liability, the merger may

---

2. Indiana Trial Rule 23.1 provides that a "shareholder or . . . holder of an interest" in shares "at the time of the transaction . . . of which he complains" may bring a derivative action to "enforce a right" of the corporation which the corporation has "failed to enforce."

be attacked as devoid of a legitimate corporate purpose" by the former shareholder. *Id.* In such a case, *Gabhart* concluded, the trial court held equity jurisdiction to grant relief to the former shareholder.

■ Plaintiffs argue that because as in *Gabhart,* no shareholder of the surviving corporation held shares at the time of Defendants' alleged wrongdoing, the Plaintiffs may maintain this derivative action[3] on behalf of the former Biomet against Defendants. We cannot agree.

■ Unlike in *Gabhart,* there is no claim that the Biomet sale was without any "legitimate corporate purpose." *Id.* at 357. Further, there is no allegation that the Buyer had in any way "participated in" the wrongdoing alleged by Plaintiffs as the basis for their action. *Id.* In addition, although (as noted by Plaintiffs) it can be argued that the Buyer's acquisition of the former Biomet does not constitute a transfer thereof "by operation of law," *Gabhart* expressly stated that the merged corporation's "assets and liabilities are transferred to the surviving corporation by operation of law." *Id.* at 356. One such asset is the claim against Defendants.[4]

Plaintiffs next argue that the appraisal procedure found in the dissenters' rights statute, Indiana Code section 23–1–44–8, is "inapplicable" to their claims. Plaintiffs' Br. at 11. They direct us to the provision stating that with respect to "a plan of merger," a shareholder "entitled to dis-sent" under the statute "may not challenge the corporate action creating ... the shareholder's entitlement." Ind.Code § 23–1–44–8(a), -(c). Plaintiffs argue that they do "not challenge the merger itself," nor "whether the merger involved a fair price in light of Biomet's condition at the time" of the merger, but rather seek to pursue claims alleging

> that Defendants' breaches of their fiduciary duties related to stock option backdating that occurred prior to the merger caused substantial losses to [Biomet], and that the individual defendants [were] unjustly enriched by millions of dollars as a result of their receipt of backdated stock options.

Plaintiffs' Br. at 11.

Both parties argue the application of *Fleming v. International Pizza Supply Corp.,* 676 N.E.2d 1051 (Ind.1997) ("*Fleming II* ") to the facts here. In *Fleming II,* pursuant to the statute, the plaintiff minority shareholder dissented to the sale of the closely held corporation's assets. He sought not only to have the value of his shares determined pursuant to the statutory appraisal provision but also to pursue damages from the majority shareholder for breach of fiduciary duties—which he claimed had depleted the value of the corporation prior to the sale. *Fleming II* began by reviewing the 1977 analysis and holding of *Gabhart,* and then noted the subsequent enactment in 1986 of Indiana's Business Corporation Law ("BCL").[5]

**3.** "A derivative action is one brought by a shareholder in the name or right of a corporation to redress an injury sustained by, or to enforce a duty owed to, the corporation." *PricewaterhouseCoopers, LLP v. Massey,* 860 N.E.2d 1252, 1257 (Ind.Ct.App.2007), *trans. denied.*

**4.** As discussed at the oral argument, a claim could also be pursued by the Buyer as a *direct* action against the Defendants.

**5.** That Business Corporation Law includes a provision stating that in order to "commence a proceeding in the right of a" corporation, the person must have been "a shareholder of the corporation when the transaction complained of occurred or ... became a shareholder through transfer by operation of law from one who was a shareholder at that time. The derivative proceeding may not be maintained if it appears that the person commencing the proceeding does not fairly and

*Fleming II* further noted the omission from the BCL of certain language found in the model act; and the legislature's publication with the BCL of the "Official Comments to the BCL,"—comments specifically explaining that Indiana Code section 23–1–44–8(c).

> which establishes the exclusivity of Chapter 44's dissenters' rights remedies, deletes [the model act] language stating that such rights are exclusive "unless the transaction is unlawful or fraudulent with respect to the shareholder or the corporation." Deletion of this language reflects a conscious response to the Indiana Supreme Court's decision in *Gabhart v. Gabhart,* 267 Ind. 370, 370 N.E.2d 345 (1977).

676 N.E.2d at 1055 (quoting the Official Comments to the BCL).

Our Supreme Court then concluded that subsequent to the enactment of the BCL, "in a merger or asset sale, the exclusive remedy for the value of the shareholder's shares is the statutory appraisal procedure"—which remedy included "the ability of dissenting shareholders to litigate their breach of fiduciary duty or fraud claims *within the appraisal proceeding.*" *Id.* at 1056, 1057 (emphasis added). In a footnote, the court found it to be

> ... clear that the BCL did not intend to restrict any claims of wrongdoing that a corporation or shareholder brings before the corporate action creating dissenters' rights occurs.

*Id.* at 1057 n. 9. Plaintiffs terminate their quotation of the footnote at this point, suggesting that this sentence authorizes their continued standing to pursue their claim. However, the *Fleming II* footnote

adequately represent the interests of the shareholders in enforcing the right of the corporation." I.C. § 23–1–32–1.

**6.** "We believe it is equally clear that the [Business Corporation Law ('BCL')] did not

continues after the sentence quoted above as follows:

> For example, if an officer had stolen money from the corporation, the corporation (or a shareholder on the corporation's behalf) would have a claim (or a derivative suit on behalf of the corporation) to recover the money from the officer. If such a claim is not yet resolved at the time the fair value of the dissenters' shares is established, the corporation's claim should be valued like any other asset of the corporation. To the extent judicial intervention is required to accomplish that valuation, the claim could be tried within the judicial appraisal proceeding, if any, or using some other procedure established by the trial court and appropriate in the circumstances.

*Id.*

Plaintiffs assert that although *Fleming II* "held that the plaintiff's breach of fiduciary duty and fraud claims had to be resolved within the exclusive remedy of appraisal," *Fleming II* does not foreclose their continuing the instant derivative action because Fleming filed suit *after* he dissented from the sale and demanded payment for what he alleged to be the diminished value of his shares (due to the breach of fiduciary duties), while they "filed suit long before" the asset sale. Plaintiffs' Br. at 12, 13. Moreover, Plaintiffs remind us, in *Fleming v. International Supply Corp.,* 707 N.E.2d 1033, 1036 (Ind.Ct.App.1999), ("*Fleming III* "), *trans. denied,* a panel of this court noted the first sentence of the above footnote [6] and stated,

> intend to restrict any claims of wrongdoing that a corporation or shareholder brings *before* the corporate action creating dissenters' rights occurs." *Fleming III,* 707 N.E.2d at

Thus, under *Fleming II,* if Fleming had filed his derivative action before the occurrence of the corporate action that created his dissenters' rights, then his derivative action could go forward.

We are reluctant to find this portion of *Fleming III* dispositive, inasmuch as the issue in *Fleming III* was whether after *Fleming II,* Fleming could amend his action to add a derivative action. Further, it relies on only a portion of the *Fleming II* footnote and disregards the subsequent statement regarding resolution of a claim to recover money from a wrongdoing officer that "is not yet resolved at the time the fair value of the dissenters' shares is established" in the dissenters' rights proceeding. *Fleming II,* 676 N.E.2d 1051, 1057 n. 9.

Plaintiffs also argue that *Fleming II* did not hold that derivative claims must always be brought solely within the appraisal proceedings framework and that there could be no other remedy. As authority for the proposition that they may pursue this derivative action claiming Defendants' breach of fiduciary duty, they cite the statement of *Galligan v. Galligan,* 741 N.E.2d 1217 (Ind.2001), that "dissenters' rights are the exclusive remedy afforded for actions or omissions in a merger or asset sale, but failure to afford the dissenters' rights remedy is an independent wrong that is not itself subject to the dissenters' rights provision." *Id.* at 1225–26. In *Galligan,* the majority shareholder of the closely held corporation failed to send the notice required by the dissenters' rights statute to the minority shareholders after they objected to an asset sale and sought to assert their statutory dissenters' rights. *Galligan* held that this failure constituted a claim "for breach of statutory duty of a director," for which the responsible director "may be liable" if "damages

can be shown to have been caused by" that breach. *Id.* at 1226, 1227.

As Defendants respond, *Galligan* "expressly said *Fleming* [*II* ] would have controlled the case—and barred any action by the plaintiffs—but for the fact that the defendants did not follow the proper appraisal procedures." Defendants' Br. at 34. Here, Plaintiffs do not claim that Defendants breached a dissenters' rights statutory duty, as in *Galligan.* Moreover, to find that *Galligan's,* reference to an "independent wrong that is not itself subject to the dissenters' rights statute" created an exception so as to permit proceeding other than within the statutory framework would eviscerate the statute's expressed intent and the holding of *Fleming II. Galligan,* 741 N.E.2d at 1227. Accordingly, we do not find that *Galligan* authorizes Plaintiffs to maintain their derivative action and precludes the trial court's order of dismissal.

██ Finally, Plaintiffs argue that "[t]here appears to be no Indiana authority that mandates that the statutory appraisal procedure is the exclusive remedy for pre-existing derivative claims that do not specifically concern the valuation of shares at the time of the merger . . . ." Plaintiffs' Reply at 12. Be that as it may, it remains that despite Plaintiffs' repeated and heated contention that they are not challenging the asset sale or claiming that their shares of stock were worth more than the $46.00 per share that they received at the time of the sale, they undeniably seek additional compensation for those shares, and our Supreme Court has clearly held that a claim as to the value of shareholders' shares in an asset sale is a matter to be determined in the context of the appraisal process. *Fleming II,* 676 N.E.2d at 1057.

1036 (quoting *Fleming II,* 676 N.E.2d at 1057 n. 9 (emphasis added in *Fleming III* )).

We are cognizant, as noted at oral argument, of *Gabhart's* statement that "no wrong should be without a remedy." 370 N.E.2d at 358. Here, however, the Buyer succeeded to the rights of the former Biomet corporation to seek redress for any alleged injury suffered by the corporation as a result of options backdating by Defendants, and Plaintiffs have sold their shares in that corporation.[7] Therefore, we do not find that the trial court erred in granting the motion to dismiss based on Plaintiffs' lack of standing.

Affirmed.

KIRSCH, J., concurs.

BARNES, J., concurs in result.

---

7. Further, at oral argument, counsel for Plaintiffs stated that Plaintiffs had filed a separate action challenging the sale, wherein they alleged the share price was inadequate and unfair. Counsel for Defendants stated that Plaintiffs' separate lawsuit challenging the sale had been settled; counsel for Plaintiffs did not challenge that statement.