

FILED
Dec 30 2015, 8:43 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Daniel L. Brown
Daniel L. Brown Law Office, P.C.
Salem, Indiana

ATTORNEYS FOR APPELLEE

Douglas A. Hoffman
Jeremy M. Dilts
Carson Boxberger LLP
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Risha D. Warren, | December 30, 2015 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 59A01-1506-PL-617 |
| v. | Appeal from the Orange Circuit Court |
| Board of School Trustees of the Springs Valley Community School Corporation, | The Honorable John Evans, Special Judge |
| *Appellee-Defendant* | Trial Court Cause No. 59C01-1301-PL-26 |

**Robb, Judge.**

# Case Summary and Issues

[1]     Risha Warren filed a complaint against the Board of School Trustees of the Springs Valley Community School Corporation ("School Board"), alleging violations of Indiana's Open Door Law, breach of contract, and defamation. The trial court granted summary judgment in favor of the School Board.

Warren appeals, raising the following restated issues: 1) whether the trial court erred in granting summary judgment; and 2) whether the trial court erred in denying her motion to compel. Concluding the trial court erred by granting summary judgment in favor of the School Board as to the Open Door Law claim, we reverse and remand for further proceedings on that claim. On the remaining claims we affirm the grant of summary judgment in favor of the School Board. As for Warren's motion to compel, we conclude the trial court did not abuse its discretion and affirm the trial court's denial of the motion. We therefore affirm in part, reverse in part, and remand.

## Facts and Procedural History

From August 2008 to December 2012, Warren was employed as a second grade teacher at Springs Valley Elementary School. On November 16, 2012, Warren administered a "matching" test to her students. Appellant's Appendix at 472. One student, whom Warren believed "was not performing to her best potential," completed the test by drawing lines straight across the page. *Id.* at 123. The student "ma[de] no effort to do the test correctly." *Id.* When Warren discovered the student's lack of effort, she took the student to see the school principal. On the way to the principal's office, another teacher heard Warren say she was going to "kill" the student. *Id.* at 305. Warren was "crying and upset" when she entered the principal's office. *Id.* at 328. She demanded to see an administrator and told the secretaries, "If you don't get me an administrator

now, I'm going to kill her!" *Id.* The secretaries did not believe Warren's threat was credible, but they arranged for Warren to go home early.

[3] On November 26, the school principal provided Warren with notice of the school's preliminary decision to terminate her employment. *See* Ind. Code § 20-28-7.5-2 (outlining the procedure for canceling a teacher's contract). The notice cited a school rule providing for the immediate suspension or dismissal of an employee who has engaged in "threats and/or acts of violence, fighting or attempting bodily injury to another while on school property or school sponsored functions." Appellant's App. at 467. Warren requested a private conference with Superintendent Todd Pritchett, which was held two days later on November 28. The following day, Superintendent Pritchett issued a written recommendation to the School Board that Warren's employment be terminated.

[4] On December 3, Warren requested a private conference with the School Board. Superintendent Pritchett issued to Warren a "Notice of Conference with School Board," which stated in relevant part,

> Pursuant to IC 20-28-7.5-2, and your timely made written request for a private conference with the School Board, the Board of School Trustees of Springs Valley School Corporation will confer with you at a private conference to be held at an Executive Session of the School Board beginning at 5:00 p.m. on Thursday, December 20, 2012, at the Springs Valley Learning Center located at 479 South Larry Bird Blvd., French Lick, Indiana 47432. A special meeting of the Board will be held following the Executive Session. After the private conference, and at a special meeting of the Board, the Board of School Trustees is expected to

make a determination as to your status as a teacher at the Springs Valley Elementary School.

*Id.* at 471.

[5] In addition, the School Board gave the following public notice of the meeting:

SPRINGS VALLEY SCHOOL CORPORATION
Board of School Trustees
Special School Board Meeting

EXECUTIVE SESSION
    DATE:    December 20th, 2012
    TIME:    5:00 P.M.
    PLACE:  Springs Valley Learning Center

    AGENDA
  1) To receive information concerning the alleged misconduct of an individual over whom the governing body has jurisdiction.
  2) To discuss, before a determination, the individual's status as an employee.

REGULAR SESSION
    DATE:    December 20th, 2012
    TIME:    7:00 P.M. or immediately following the Executive Session, whichever comes later
    PLACE:  Springs Valley Learning Center

    AGENDA
  1) Meeting called to order
  2) Opportunity for Public to Address the Board
  3) Personnel
  4) Old and Unfinished Business
  5) New Business
  6) Adjournment

*Id.* at 483.

[6] On December 20, the School Board convened and conducted the private conference during an executive session. Warren attended with her attorney, Michael Kendall, and her union representative, Sandra Steele. The private conference portion was "quite long." *Id.* at 121. The School Board heard testimony from nine different witnesses and received twelve exhibits. After the private conference, the School Board retired to deliberate. During deliberations, Warren, Kendall, and Steele waited in a separate room down the hall. At some point, the School Board's attorney entered the room where Warren was waiting "to offer her a package that would have allowed her to keep her position." *Id.* Warren made a counteroffer and "remained in the room down the hall, expecting to hear again from the school board attorney." *Id.* Deliberations continued for hours, but Warren did not receive another offer from the School Board. Warren requested the public meeting portion be rescheduled due to the length of the proceedings and the lateness of the hour, but she did not receive a response. Then, at approximately 2:30 A.M., Warren noticed through a window that cars were leaving the parking lot outside.

[7] The School Board had concluded the executive session and held a public meeting to vote on Warren's termination. The School Board did not notify Warren that the executive session had ended. The meeting memorandum indicates the School Board "met in Regular Session at 2:25 A.M. on December 21, 2012" and voted to dismiss Warren prior to adjourning at 2:33 A.M. *Id.* at

485. The motion to terminate Warren's contract "passed by the vote of 4-0-3," with three board members abstaining. *Id.*

[8] Several members of the public attended the meeting, including Warren's stepmother and sister, but Warren did not attend because she was unaware the meeting was taking place. The School Board signaled the beginning of the meeting by opening the doors and sending someone into the hallway to make an announcement. Members of the public were congregating in the "common area" of the building. *Id.* at 192. One board member recalled, "I think that the restroom passes by where the public was so I believe that a few board members walked out to go to the restroom and informed the public." *Id.* at 145.

[9] Warren subsequently filed a claim for unemployment benefits. A claims deputy found Warren was discharged for just cause and thus ineligible for benefits. The Review Board of the Indiana Department of Workforce Development affirmed the denial of benefits, and this court affirmed the Review Board's determination in *Warren v. Review Bd. of Ind. Dep't of Workforce Dev.*, No. 93A02-1311-EX-949, 2014 WL 1390567 (Ind. Ct. App. May 7, 2014).

[10] Warren also filed a complaint alleging violations of Indiana's Open Door Law. *See* Ind. Code § 5-14-1.5-1 to -8. The complaint requested a declaratory judgment voiding the final action taken by the School Board at the December 21st meeting and injunctive relief reinstating Warren's teacher contract. The School Board filed a motion for summary judgment and designated evidence in support, including our decision affirming the Review Board's determination

denying Warren unemployment benefits. Warren later amended her complaint by adding two additional counts alleging breach of contract and defamation. The School Board filed a Notice to the Court Regarding Summary Judgment, which stated its previously filed motion for summary judgment and designations were dispositive of all of Warren's claims, including the newly added ones.

Warren filed a response to the School Board's motion and designated evidence in opposition to summary judgment. Thereafter, the trial court held a hearing on the motion for summary judgment. After the hearing, Warren filed supplemental designations, but the School Board promptly moved to strike the supplemental designations. The trial court granted the School Board's motion to strike and motion for summary judgment on May 26, 2015. The order granting the School Board's motion for summary judgment stated this court's decision affirming the determination that Warren was discharged for just cause collaterally estopped the breach of contract claim. This appeal followed.

# Discussion and Decision

## I. Summary Judgment

### A. Standard of Review

Warren contends the trial court erred in granting the School Board's motion for summary judgment. We review the grant of summary judgment de novo. *Lyons v. Richmond Cmty. Sch. Corp.*, 19 N.E.3d 254, 259 (Ind. 2014). Our review

is limited to those facts designated to the trial court, Ind. Trial Rule 56(H), and we construe all facts and reasonable inferences drawn from those facts in favor of the non-moving party, *Meredith v. Pence*, 984 N.E.2d 1213, 1218 (Ind. 2013). We will affirm a grant of summary judgment only if the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. T.R. 56(C). On appeal, the non-moving party carries the burden of persuading us the grant of summary judgment was erroneous. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).

## B. Collateral Estoppel

[13] The order granting the School Board's motion for summary judgment stated this court's decision affirming the determination that Warren was discharged for just cause collaterally estopped Warren's breach of contract claim. Collateral estoppel applies when "a particular issue is adjudicated and then put in issue in a subsequent suit on a different cause of action between the same parties or their privies." *Ghosh v. Ind. State Ethics Comm'n*, 930 N.E.2d 23, 26 (Ind. 2010) (quoting *McClanahan v. Remington Freight Lines, Inc.*, 517 N.E.2d 390, 394 (Ind. 1988)). "Fundamentally, the issue sought to be estopped must be the same as the issue previously adjudicated." *Bartholomew Cnty. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 14 N.E.3d 806, 811 (Ind. Ct. App. 2014), *trans. denied*. In the context of administrative collateral estoppel, our supreme court has adopted the following test:

> 1) whether the issues sought to be estopped were within the statutory jurisdiction of the agency;

2) whether the agency was acting in a judicial capacity;

3) whether both parties had a fair opportunity to litigate the issues;

4) whether the decision of the administrative tribunal could be appealed to a judicial tribunal.

*McClanahan*, 517 N.E.2d at 394. If any element is absent, collateral estoppel does not apply. *See id.*

[14] The School Board argues our decision affirming the Review Board's determination denying Warren unemployment benefits estops *all* of Warren's claims in the present case.[1] We disagree. The issues Warren raises in the present case were not adjudicated in the unemployment proceeding, which was solely concerned with the existence of just cause. *See* Ind. Code § 22-4-15-1

---

[1] The School Board contends it is "relying on the facts found to be true by *this Court*," as opposed to the Review Board, and that this court "determined that Ms. Warren did, in fact, threaten to kill a student and that Springs Valley's termination of Ms. Warren was justified." Brief of Appellee at 6 (emphasis in original). We first note this court merely reviews factual findings. In the context of unemployment benefits, we review findings of basic fact for substantial evidence and findings of ultimate fact for reasonableness. *Benard v. Review Bd. of Ind. Dep't of Workforce Dev.*, 997 N.E.2d 1077, 1080 (Ind. Ct. App. 2013). If supported by the evidence, the findings of the Review Board are binding on this court. *Id.*; Ind. Code § 22-4-17-12(a).

Second, we note the applicability of administrative collateral estoppel does not turn on whether an agency ruling has actually been judicially reviewed. In *Ghosh*, 930 N.E.2d 23, the Indiana Department of Environmental Management ("IDEM") terminated Ghosh for an ethics code violation, and the State Employee Appeals Commission ("SEAC") affirmed the termination. Ghosh attempted to seek judicial review of the SEAC's decision, but his petition for judicial review was dismissed for failure to timely file the agency record. The Office of the Inspector General filed a separate complaint against Ghosh with the State Ethics Commission, and our supreme court held Ghosh was collaterally estopped from challenging his termination in the subsequent proceeding before the State Ethics Commission. Because the IDEM's decision was reviewable by the SEAC and the SEAC's ruling was subject to judicial review, Ghosh had a fair opportunity to litigate the issue of his termination and was collaterally estopped from seeking further review.

(stating an employee is ineligible for unemployment benefits if she was discharged for "just cause"). Whether the School Board breached Warren's teacher contract is not the same issue as whether the School Board had just cause to discharge Warren. Likewise, whether the School Board defamed Warren involves different concerns than the existence of just cause, and the fact that the School Board had just cause does not excuse noncompliance with Indiana's Open Door Law. These issues are not the same as the issue previously adjudicated. *See Bartholomew Cnty.*, 14 N.E.3d at 811 (concluding the issue of whether a sheriff's deputy was discharged for "just cause" was not collaterally estopped by the county merit board's determination that he was discharged for "cause" under Indiana Code section 36-8-10-11(a)).

[15]  Moreover, even if the issues were the same, Indiana Code section 22-4-17-12(h) states any finding or conclusion made in an action or proceeding concerning the award of unemployment benefits

> shall not be used as evidence in a separate or subsequent action or proceeding between an individual and the individual's present or prior employer in an action or proceeding brought before an arbitrator, a court, or a judge of this state or the United States regardless of whether the prior action was between the same or related parties or involved the same facts.

This statute clearly precludes the use of unemployment proceedings in subsequent civil suits. *Tony v. Elkhart Cnty.*, 918 N.E.2d 363, 369 (Ind. Ct. App. 2009). *But see Uylaki v. Town of Griffith*, 878 N.E.2d 412 (Ind. Ct. App. 2007) (concluding Uylaki's wrongful termination claim was collaterally estopped by

the Review Board's determination that he was discharged for just cause, without mention of Indiana Code section 22-4-17-12(h)).[2]

[16] Administrative collateral estoppel does not apply in this case. The trial court erred in concluding Warren's breach of contract claim is collaterally estopped by our decision in *Warren v. Review Bd. of Ind. Dep't of Workforce Dev.*, No. 93A02-1311-EX-949, 2014 WL 1390567 (Ind. Ct. App. May 7, 2014).

## C. Breach of Contract and Defamation

[17] As the non-moving party, Warren carries the burden of persuading us the grant of summary judgment was erroneous. *Hughley*, 15 N.E.3d at 1003. Although we agree collateral estoppel does not apply to the breach of contract and defamation claims, we conclude Warren has failed to demonstrate the grant of summary judgment on these claims was otherwise improper. Warren makes no argument and provides no citations to designated evidence showing a genuine issue of material fact relevant to these claims. Accordingly, appellate review is waived, and we affirm the trial court's entry of summary judgment in favor of

---

[2] Indiana Code section 22-4-17-12(h) was added in 1995. Pub. L. No. 21-1995. But even prior to the enactment of this provision, we recognized the informality of unemployment proceedings counseled against their use in subsequent civil actions. In *Cox v. Ind. Subcontractors Ass'n, Inc.*, 441 N.E.2d 222, 226 (Ind. Ct. App. 1982), Cox filed suit against his former employer, alleging breach of contract and several tort claims. We held the Review Board's determination that Cox was discharged for just cause did not collaterally estop Cox's claims because the Review Board is "not the proper authority to determine complex legal issues involving contract interpretation and tort issues. . . ." *Id.* "It is designed to administer unemployment benefits," we explained, and "lacks the requisite training and experience" to determine other matters. *Id.*; *see also McClanahan*, 517 N.E.2d at 395 (stating the "relative informality" of unemployment proceedings, "designed for quick and inexpensive determinations," precluded the application of collateral estoppel in a wrongful discharge action because the parties did not have a fair opportunity to litigate the issues).

the School Board on the breach of contract and defamation claims. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring each contention in the appellant's brief be supported by cogent reasoning and citations to relevant authority).

## D. Open Door Law

[18] Warren contends the School Board provided inadequate notice of the date and time of the public meeting held after the executive session, thereby violating Indiana's Open Door Law, and the trial court erred by granting summary judgment in favor of the School Board on this claim. The School Board agrees the proceedings were subject to the requirements of the Open Door Law,[3] but the School Board argues the notice was adequate and "specific in notifying the public that the public session would occur immediately following the executive session." Br. of Appellee at 8.

[19] The purpose of the Open Door Law is to ensure government business be conducted openly so that the general public may be fully informed. *Lake Cnty. Trust Co. v. Advisory Plan Comm'n of Lake Cnty.*, 904 N.E.2d 1274, 1279 (Ind. 2009). Indiana Code section 5-14-1.5-5(a) requires the governing body of a public agency to give "[p]ublic notice of the date, time, and place of any meetings, executive sessions, or of any rescheduled or reconvened meeting

---

[3] The Open Door Law requires "all meetings of the governing bodies of public agencies . . . be open at all times for the purpose of permitting members of the public to observe and record them." Ind. Code § 5-14-1.5-3(a). A "public agency" includes any school corporation "by whatever name designated, exercising in a limited geographical area the executive, administrative, or legislative power of the state or a delegated local governmental power." Ind. Code § 5-14-1.5-2(a)(2).

. . . ." A "meeting" is defined as "a gathering of a majority of the governing body of a public agency for the purpose of taking official action upon public business." Ind. Code § 5-14-1.5-2(c). An "executive session" is defined as "a meeting from which the public is excluded, except the governing body may admit those persons necessary to carry out its purpose." Ind. Code § 5-14-1.5-2(f). A governing body may hold an executive session in certain instances provided by statute, Ind. Code § 5-14-1.5-6.1(b),[4] but "final action must be taken at a meeting open to the public." Ind. Code § 5-14-1.5-6.1(c). "Final action" refers to "a vote by the governing body on any motion, proposal, resolution, rule, regulation, ordinance, or order." Ind. Code § 5-14-1.5-2(g).

[20] If final action is taken at any meeting of which notice is not given in accordance with Indiana Code section 5-14-1.5-5, an action may be filed by any person to declare the final action void. Ind. Code § 5-14-1.5-7(a)(3)(B). "The plaintiff need not allege or prove special damage different from that suffered by the public at large." Ind. Code § 5-14-1.5-7(a). In determining whether to declare a final action void,

> [A] court shall consider the following factors among other relevant factors:
>
> > (1) The extent to which the violation:
> > > (A) affected the substance of the policy, decision, or

---

[4] In the present case, the executive session was held "to receive information concerning [an] individual's alleged misconduct . . . and . . . to discuss, before a determination, [an] individual's status as an employee . . . ." Ind. Code § 5-14-1.5-6.1(b)(6).

final action;
(B) denied or impaired access to any meetings that the public had a right to observe and record; and
(C) prevented or impaired public knowledge or understanding of the public's business.

(2) Whether voiding of the policy, decision, or final action is a necessary prerequisite to a substantial reconsideration of the subject matter.

(3) Whether the public interest will be served by voiding the policy, decision, or final action by determining which of the following factors outweighs the other:
(A) The remedial benefits gained by effectuating the public policy of the state declared in [Ind. Code § 5-14-1.5-1].
(B) The prejudice likely to accrue to the public if the policy, decision, or final action is voided, including the extent to which persons have relied upon the validity of the challenged action and the effect declaring the challenged action void would have on them.

(4) Whether the defendant acted in compliance with an informal inquiry response or advisory opinion issued by the public access counselor concerning the violation.

Ind. Code § 5-14-1.5-7(d).

[21] Here, the public notice stated the executive session would begin at 5:00 P.M. on December 20, 2012, and the "regular session" would begin at 7:00 P.M. "or immediately following the Executive Session, whichever comes later."

Appellant's App. at 483.  In fact, the public meeting began at approximately 2:30 A.M. the following day.  Indiana Code section 5-14-1.5-5(h) provides,

> Notice has not been given in accordance with this section if a governing body of a public agency convenes a meeting at a time so unreasonably departing from the time stated in its public notice that the public is misled or substantially deprived of the opportunity to attend, observe, and record the meeting.

[22]  We conclude the public notice did not satisfy the Open Door Law's notice requirement because the School Board convened the meeting at a time unreasonably departing from the time stated in the notice.  Indiana Code section 5-14-1.5-5(a) requires public notice of the "date, time, and place of any meetings," and "whichever comes later" is not a concrete "time" from the public's perspective.  The tentative start time was 7:00 P.M., but the meeting was held in the middle of the night, over seven hours later.[5]  Undoubtedly, the

---

[5] The Office of the Public Access Counselor and Office of the Indiana Attorney General maintain a "Handbook on Indiana's Public Access Laws," which offers guidance on the Open Door Law's requirements.  Office of the Public Access Counselor & Office of the Indiana Attorney General, Handbook on Indiana's Public Access Laws 5-22 (2011), *available at* http://www.in.gov/pac/files/pac_handbook.pdf.  Although the opinion of the Attorney General is not binding on this court, *McPeek v. McCardle*, 888 N.E.2d 171, 177 n.4 (Ind. 2008), we would note the Handbook states that a notice indicating a public meeting will be held "after the executive session," is "not proper notice because it does not provide the time the meeting is scheduled to begin." *Id.* at 10.  In addition, the Handbook includes the following example relevant to the case before us:

> *May a meeting be set at any time?*
>   The [Open Door Law] does not define any particular time for a meeting as inappropriate.  However, a public agency may not delay the start of a meeting to the extent the delay frustrates the public's right to attend and observe the agency's proceedings.
> * * *
> *Example 2:*  A town board gives notice of an executive session for 4:30 p.m., with a public meeting to follow at 5:00 p.m.  The board does most of its work in executive session and convenes the public meeting four hours late, at 9:00 p.m.  This is contrary to the [Open Door

lateness of the hour substantially deprived the public of the opportunity to attend. The fact that several members of the public nonetheless attended does not alter our conclusion. Holding a public meeting at 2:30 A.M. is unreasonable and contrary to the purpose of the Open Door Law.

[23] The School Board argues that even if it violated the Open Door Law, Warren's claim fails as a mere technical violation. We disagree. We are required to liberally construe the provisions of the Open Door Law in order to give effect to the legislature's intention that state business be conducted openly. *Baker v. Town of Middlebury*, 753 N.E.2d 67, 70 (Ind. Ct. App. 2001) (citing Ind. Code § 5-14-1.5-1), *trans. denied.* The notice for the meeting did not comply with the requirements of the Open Door Law, and the violation both impaired public access to the meeting and affected the substance of the final action taken at the meeting. *See* Ind. Code § 5-14-1.5-7(d)(1). The School Board voted to cancel Warren's contract by a 4-0-3 vote, with three members abstaining. Had the meeting been timely held with proper notice, the designated evidence shows Warren would have attended and objected to two of the board members voting, both of whom voted in favor of her termination.[6]

---

Law] because the delay may have frustrated the public's right to attend, observe and record the public meeting.

*Id.* at 11-12.

[6] Warren would have objected to Ralph Purkhiser voting because he appeared to be sleeping during the private conference portion of the proceedings. She would have objected to Kevin Allstot voting based on a potential conflict of interest created by his wife's employment within the Springs Valley School Corporation.

[24] We also conclude the public interest would be served by voiding the final action taken at the meeting. As stated above, holding a public meeting at 2:30 A.M. is plainly contrary to the purpose of the Open Door Law. Moreover, despite the fact that board members claim they did not know where Warren was or assumed Warren did not want to attend the public meeting, the School Board's ongoing negotiations with Warren show the School Board knew Warren was in the building and wanted to be present for the meeting. Their failure to notify Warren that the executive session had concluded indicates they did not want Warren to attend to the public meeting. Whether deliberate or indifferent, the School Board's conduct was unreasonable and antithetical to legislature's intention that state business be conducted openly. And nothing in the record suggests voiding the vote would result in prejudice to the public that would outweigh the remedial benefits gained by requiring the School Board to comply with the law. *See* Ind. Code § 5-14-1.5-7(d)(3). The trial court erred by granting summary judgment in favor of the School Board on this claim.[7]

## II. Motion to Compel

### A. Standard of Review

[25] During discovery, Warren filed a Motion to Compel Answers to Deposition Questions regarding communications that occurred during the School Board's

---

[7] Having concluded the trial court erred by granting summary judgment in favor of the School Board on Warren's Open Door Law claim, we need not address whether the trial court erred by granting the School Board's motion to strike Warren's supplemental designations. The issue is moot.

executive session. The School Board asserted qualified privilege. The trial court denied the motion to compel, concluding "[Warren]'s argument that she should be able to obtain through discovery information from the executive session, although she and the rest of the public are otherwise specifically excluded from the executive session, fails." Appellant's App. at 196. Warren argues the trial court erred by denying her motion to compel.

[26] We review discovery matters for an abuse of discretion. *First of Am. Bank, N.A. v. Norwest Bank, Ind., N.A.*, 765 N.E.2d 149, 153 (Ind. Ct. App. 2002), *trans. denied*. An abuse of discretion occurs where the decision is against the logic and natural inferences to be drawn from the facts of the case. *Davidson v. Perron*, 756 N.E.2d 1007, 1012 (Ind. Ct. App. 2001).

## B. Deliberations of Decisionmakers

[27] "If a communication is privileged, it is afforded the special protection of being undiscoverable." *Popovich v. Ind. Dep't of State Revenue*, 7 N.E.3d 406, 415 (Ind. T.C. 2014) (citing T.R. 26(B)(1)). The Open Door Law permits public agencies to meet in executive session for limited purposes, but "the statute is silent as to whether discussions during executive sessions are privileged or whether persons present during an executive session can be barred from disclosing what occurred during an executive session." *Gary Cmty. Sch. Corp. v. Lardydell*, 8 N.E.3d 241, 245 (Ind. Ct. App. 2014), *trans. denied*.

[28] In *Gary Community School Corporation*, we held the trial court did not abuse its discretion by permitting a school board member to testify about a video she

reviewed during an executive session of the school board, noting the trial court did not allow the school board member to testify to "communications" that occurred during executive sessions. *Id.* at 246. The school board member "only described what she saw in the video," which had not been disclosed to the opposing side during discovery. *Id.* In holding the trial court did not abuse its discretion, we did not reach the question of whether qualified privilege applied because the school board member "did not testify about any communications, litigation strategies, or any other matters that occurred during the executive sessions she attended." *Id.*

[29] Likewise, the facts of the present case do not require us to decide whether discussions during executive sessions are privileged. *See In re C.P.*, 563 N.E.2d 1275, 1277 (Ind. 1990) ("[P]rivileges 'are not lightly created nor expansively construed . . . .'") (citation omitted). Warren contends she is entitled to know "the substance of the communications about her during the executive session" and "how the determination was reached to terminate her position." Brief of Appellant at 21. Her discovery request goes to deliberative processes of the School Board and its members, and our supreme court has recognized a "general bar against probing the mental processes involved in administrative decision-makers' deliberations." *Med. Licensing Bd. of Ind. v. Provisor*, 669 N.E.2d 406, 409 (Ind. 1996); *see also Baseball, Inc. v. Ind. Dep't of State Revenue*, 672 N.E.2d 1368, 1376 (Ind. Ct. App. 1996) (holding a discovery request constituted "an impermissible probe into the hearing officer's decision-making process" where the defendant "sought the testimony of the hearing officer

because she was 'the only person who [could] articulate the basis for each finding of fact'") (alteration in original), *trans. denied*; *Popovich*, 7 N.E.3d at 416 (distinguishing the existence of an evidentiary privilege from the "general bar against probing the mental processes involved in administrative decision-makers' deliberations") (citation omitted).

[30] The School Board's deliberations are not discoverable because "judicial inquiries into the private motivation or reasoning of administrative decisionmakers is a substantial intrusion into the functions of the other branches of government." *Provisor*, 669 N.E.2d at 409. Moreover, the Open Door Law specifically permits the exclusion of the public during executive sessions, which may be held in instances requiring candor or discretion. *See* Ind. Code § 5-14-1.5-6.1(b) (stating an executive session may be held to discuss matters such as pending or threatened litigation, school safety and security measures, an individual's misconduct, records classified as confidential by federal or state law, the appointment of a public official, or intelligence intended to prevent or respond to the threat of terrorism). Requiring school board members to testify about communications made during an executive session would frustrate the legislature's intent and "may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process." *Marion Cnty. Sheriff's Merit Bd. v. Peoples Broad. Corp.*, 547 N.E.2d 235, 238 n.5 (Ind. 1989) (quoting *United States v. Nixon*, 418 U.S. 683, 705 (1974)). The trial court did not abuse its discretion by denying Warren's motion to compel.

# Conclusion

[31] Although we agree administrative collateral estoppel does not apply in this case, we conclude Warren has waived appellate review of the trial court's grant of summary judgment on the breach of contract and defamation claims. On the Open Door Law claim we conclude the trial court erred by granting summary judgment in favor of the School Board. We reverse and remand for further proceedings on the Open Door Law claim. Finally, as for Warren's motion to compel, we conclude the information sought is not discoverable and affirm the trial court's denial of the motion to compel. We therefore affirm in part, reverse in part, and remand.

[32] Affirmed in part, reversed in part, and remanded.

Vaidik, C.J., and Pyle, J., concur.